**Luwana JONES, Individually and as the Executor of the Estate of Calvin Cole, Jr. (deceased), Plaintiff,**

v.

**The CITY OF INDIANAPOLIS, Officer Morton Gallagher, Officer Allen Enghert, Officer Geoffrey Barbieri and John Doe, Indianapolis Police Officers, Individually and as Indianapolis Police Officers, Defendants.**

No. 02–1152 C Y/K.

United States District Court, S.D. Indiana, Indianapolis Division.

June 27, 2003.

Julie J. Carrell, Office Corporation Counsel, John F. Kautzman, Ruckelshaus, Roland, Kautzman, Blackwell & Hasbrook, Robin M. Lybolt, Office of Corporation Counsel, John C. Ruckelshaus, Ruckelshaus, Roland, Hasbrook, O'Conne, Indianapolis, IN, for Defendants.

Joseph H. Merrick, Law Office of Michael K. Sutherlin, Michael K. Sutherlin, Michael K. Sutherlin & Associates, PC, Indianapolis, IN, for Plaintiff.

## ENTRY ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND FOR A LIMITED STAY OF DISCOVERY

BAKER, United States Magistrate Judge.

After being apprehended for fleeing from the Indianapolis Police Department ("IPD") following a traffic stop, IPD transferred Calvin Cole, Jr. to the hospital in a paddy wagon. Upon his arrival to the hospital, Cole was pronounced dead. As a result, Cole's mother, Luwana Jones, individually and as the personal representative of her late son ("Plaintiff"), filed suit against the city of Indianapolis and several officers from its police department in their individual capacities (collectively "Defendants").

In discovery, Plaintiff sought to depose IPD investigators, and obtain documents relating to the IPD investigation that followed Cole's death. Defendants objected and moved for a protective order, claiming that this information is protected by the law enforcement investigatory privilege and the deliberative process privilege. Plaintiff claims that the information sought is factual rather than evaluative in nature, and is crucial in proving her case. Defendants have also moved for a limited stay in discovery pending the United States Department of Justice's ("DOJ") investigation into Cole's death. For the reasons set forth below, Defendants' motion for a protective order is GRANTED IN PART and DENIED IN PART, and Defendants' motion for a limited stay of discovery is GRANTED.

## I. Background

### A. Nature of Action

The complaint alleges that on the evening of March 6, 2002, Defendant IPD officer Morton Gallagher observed Cole driving at a high rate of speed. [Compl. ¶¶ 9–11]. When Gallagher pulled Cole over, Cole exited his vehicle and fled. With the assistance of several IPD officers, including Defendants Allen Englert, Geoffrey Barbieri, and other unknown IPD officers, IPD arrested Cole. [Id. at ¶¶ 11, 13, 16, 18–19]. Using a pair of handcuffs, one of the officers delivered at least two blows to Cole's head and neck area. In addition, another unknown officer kneed Cole in the back as Cole pleaded for them to stop. [Id. at ¶¶ 21–23]. Another officer "maced" Cole for four to five seconds. [Id. at ¶ 25].

IPD placed Cole in a paddy wagon and transported him to Wishard Memorial Hospital. Upon arrival at the hospital, Cole was unconscious, and subsequently was pronounced dead. Cole suffered a blunt force injury to the head which contributed to his death. [Id. at ¶¶ 26–28].

Plaintiff filed suit against the city of Indianapolis, the above-named police officers, and other unknown police officers in their individual capacities asserting excessive force claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments, and asserting wrongful death claims under Indiana Code §§ 34–23–1–1 and 34–23–1–2.

### B. Focus of the Discovery Dispute

On March 6, the same day as Cole's death, IPD's homicide branch initiated an internal investigation. [Foley Affid., ¶ 4]. Sgt. Prater led the investigation, and Lt. Rice assisted. As is routine in any IPD homicide investigation, the officers collected evidence and took witness statements of fellow police officers and other witnesses. [Id. at ¶¶ 5–6]. However, approximately one month later, in April 2002, the DOJ initiated its own investigation, and ordered that IPD's investigation cease. [Id. at ¶ 7]. The DOJ's investigation is ongoing. While the outcome of this investigation cannot be predicted, it could result in the indictment of one or more of the individually named Defendants in this case. As part of its investigation, the DOJ interviewed Sgt. Prater, Lt. Rice, and several other IPD officers. [Id. at ¶ 8].

On January 21, 2003, Plaintiff sent to Defendants a notice of deposition and subpoena duces tecum requesting documents and the depositions of Sgt. Prater and IPD Officer Lossie Branscumb, the officer who drove the paddy wagon on the night of Cole's death. Contending that Branscumb is a fact witness, Defendants did not object to Plaintiff taking his deposition. Plaintiff deposed Branscumb on February 5. However, on February 3 Defendants filed a motion to quash the subpoena with regard to the Prater deposition, claiming his testimony was protected by the law enforcement investigatory privilege. On February 5, the Court denied Defendants' motion to quash, ordered Plaintiff to re-notice Sgt. Prater's deposition on a date convenient to both parties, and ordered that Prater's deposition be sealed for a 30–day period. [Docket No. 26, 28].

On February 10, Plaintiff sent to Defendants a subpoena duces tecum requesting the deposition of Sgt. Prater and requesting documents compiled by IPD in the course of its investigation of the Cole homicide. In response, on February 12, Defendants filed a motion to quash the subpoena claiming that the documents sought were protected by the

investigatory privilege. [Docket No. 29, ¶ 10]. In the meantime, Plaintiff served a request for production of documents. Defendants again objected, contending the requested documents are "official, confidential, deliberative, and/or investigatory in nature and thus are privileged from discovery." [Defs.' Br., p. 4]. This cause is before the Court on Defendants' fully-briefed motion for a protective order and for a stay of discovery. The Court held oral argument on the pending motion on June 24, 2003.

## II. Discussion

### A. Applicability of the Freedom of Information Act & Indiana Law

Before turning to the merits, the Court notes that in support of their respective positions, the parties rely on both the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et. seq.*, and Indiana Code § 5–14–3–4. The FOIA defines "agency" in 5 U.S.C. § 552(f) as follows:

(f) For purposes of this section, the term—

(1) "agency" as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

*Harrell v. Fleming*, 285 F.3d 1292, 1293 (10th Cir.2002), *quoting* § 552(f). *See also DeHarder Inv. Corp. v. Indiana Housing Finance Authority*, 909 F.Supp. 606, 616 (S.D.Ind.1995). The term "agency" in the FOIA does not apply to municipal agencies such as IPD or its officers. *See, e.g., Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192, 197–98 (9th Cir.1975) *aff'd* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (FOIA does not apply to municipal corporations); *Esseily v. Giuliani*, 2000 WL 1154313, *1 (S.D.N.Y. 2000), *citing Washington v. Police Dep't*, 1994 WL 455512 at *1 (S.D.N.Y.1994) (refusing to apply FOIA to New York City police department); *Rankel v. Town of Green-*

*burgh*, 117 F.R.D. 50, 54 (S.D.N.Y.1987) (FOIA does not apply to municipalities). *See also Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 484 (2nd Cir.1999), *quoting Philip Morris, Inc., v. Harshbarger*, 122 F.3d 58, 83 (1st Cir.1997) ("FOIA . . . applies only to federal executive branch agencies"). As a result, the Court finds the parties'.references to FOIA misplaced.

The parties' reliance on I.C. § 5–14–3–4 also misses the mark. "Whenever a principal claim in federal court arises under federal law, with pendent jurisdiction over a state claim, federal common law of privileges apply." *Wilstein v. San Tropai Condominium Master Ass'n*, 189 F.R.D. 371, 375 (N.D.Ill. 1999), *quoting in part Memorial Hospital For McHenry County v. Shadur*, 664 F.2d 1058, 1062 (7th Cir.1981) ("The principal claim . . . arises under . . . a federal law. Because the state law does not supply the rule of decision as to this claim, the district court was not required to apply state law in determining whether the material sought . . . is privileged. Instead, the question of whether the privilege asserted . . . should be recognized is governed by federal common law."); *Addis v. Holy Cross Health System Corp.*, 1995 WL 429270, *3–4 (N.D.Ind.1995) ("in a non-diversity case such as this, the existence of an asserted privilege must be determined by reference to federal common law even where, as here, the action includes pendent claims under state law.") (internal citations and quotations omitted).

The parties conceded at oral argument that FOIA and I.C. § 5–14–3–4 do not apply in this instance. Defendants asserted, however, that these statutes provide strong evidence of public policy that a privilege should be afforded. While these statutes may be indicative of certain public policies regarding disclosure, in the final analysis this Court is bound by federal common law in assessing Defendants' asserted privileges.

### B. Law Enforcement Investigatory Privilege

The law enforcement investigatory privilege is "a qualified common law privilege protecting civil as well as criminal law enforcement investigatory files from civil dis-

covery." *In re Adler, Coleman, Clearing Corp.*, 1999 WL 1747410, *3 (S.D.N.Y.1999), *citing Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir. 1984). *See also Hernandez v. Longini*, 1997 WL 754041, *3–4 (N.D.Ill.1997) (law enforcement investigatory privilege arises under common law and is "incorporated under Fed.R.Civ.P. 26(b)"); *United States v. Lilly*, 185 F.R.D. 113, 115 (D.Mass.1999) ("The federal courts have recognized a qualified common-law privilege . . . for law enforcement investigatory information."). The purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *In re Polypropylene Carpet Antitrust Litigation*, 181 F.R.D. 680, 686–87 (N.D.Ga.1998), *quoting In re Department of Investigation*, 856 F.2d 481, 484 (2d Cir.1988). *See also United States v. Winner*, 641 F.2d 825, 831 (10th Cir.1981) ("The law enforcement investigative privilege is based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files.").

"A finding that the documents fall within the scope of the law enforcement investigatory privilege does not end the Court's analysis." *Polypropylene*, 181 F.R.D. at 688. The law enforcement investigatory privilege is not absolute. It can be overridden in appropriate cases by the need for the privileged materials. *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir.1997), *citing Tuite v. Henry*, 98 F.3d 1411, 1417–18 (D.C.Cir.1996). The balancing of that need—the need of the litigant who is seeking privileged investigative materials—against the harm to the government if the privilege is lifted "is a particularistic and judgmental task." *Dellwood Farms*, 128 F.3d at 1125. It is therefore confided to the discretion of the district court, meaning that appellate review is deferential. *Id., citing Tuite*, 98 F.3d at 1415–16. Defendants, the party claiming the privilege, bear the burden of justifying application of the investigatory privilege.

*See Doe v. Hudgins*, 175 F.R.D. 511, 514–15 (N.D.Ill.1997).

In balancing the public interest in protecting police investigations against the needs of civil rights plaintiffs, the Court will consider ten factors first announced in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973), which, "although not exhaustive, are useful in making this determination." *Tuite v. Henry*, 181 F.R.D. 175, 177 (D.D.C.1998). These factors are:

(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the investigation has been completed;

(7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is nonfrivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

*Tuite*, 181 F.R.D. at 177, *citing Frankenhauser*, 59 F.R.D. at 344. The Court has "considerable leeway" weighing these factors in the undertaking of the essential balancing process. *Tuite*, 181 F.R.D. at 177.

### 1. Defendants' Privilege Claims

Defendants claim that the law enforcement investigatory privilege applies to the following items:

(1) Any depositions of homicide or internal affairs investigators;

(2) Handwritten notes of any IPD personnel [Privilege Log Nos. 4, 10, 19, 21–25, & 29];

(3) Anonymous letter to the East District [Privilege Log No. 3];

(4) Affidavit of probable cause submitted by Detective Stephen J. Burke [Privilege Log No. 16];

(5) Mecca 552.txt dated 4/15/02 and 4/16/02 [Privilege Log No. 17];

(6) Confidential request for subpoena duces tecum for phone records subpoenaed by grand jury to Ameritech/SBC requested by Sgt. Prater [Privilege Log No. 18];

(7) Handwritten letter from "Herb" to Mr. Allen and corresponding envelope [Privilege Log Nos. 8 & 9];

(8) E-mail dated 7/9/02 to Sgt. Prater and Lt. Rice from Joseph Mason regarding investigation [Privilege Log No. 26];

(9) E-mail dated 7/21/02 to Sgt. Prater from Anthony Finnell regarding investigation [Privilege Log No. 27];

(10) E-mail dated 3/13/02 to Carole Johnson from Lt. Rice regarding investigation [Privilege Log No. 28];

(11) Property room vouchers or disposition orders that could disclose evidence taken by the FBI or DOJ [Privilege Log Nos. 31 & 32];[1] and

(12) Any interdepartmental communications regarding the death of Cole [Privilege Log Nos. 5–7, 13–15 & 20].

[Defs.' Br., pp. 10–11]. The Court will now examine whether this evidence is protected by the investigatory privilege.

### 2. Application of the *Frankenhauser* Factors

■ Defendants contend that the disclosure of the above-referenced evidence will result in irreparable harm to both the Defen-

dants and the integrity of the DOJ's investigation. [Defs.' Br., pp. 8–12]. In response, Plaintiff states that it is "inconceivable" that she be denied access to "crucial" fact witnesses such as Sgt. Prater and Defendants, and that the information she seeks is not obtainable from any other source. [Pl.'s Br., pp. 10–12]. To resolve this dispute, the Court will balance Plaintiff's need for the information with that of the public's interest in preventing disclosure by applying the ten *Frankenhauser* factors.

Though Defendants did not cite *Frankenhauser* in their briefs, Defendants noted at oral argument that these factors are also set forth in *In re Sealed Case*, 856 F.2d 268, 272 (D.C.Cir.1988), to which Defendants did cite. [Defs.' Br., p. 8]. Defendants carefully addressed these factors at oral argument. Plaintiff also did not cite to *Frankenhauser* in her brief, but her brief also failed to adequately address the arguments Defendants offered based upon *In re Sealed Case*. Likewise, Plaintiff offered no meaningful discussion of these factors at oral argument, even though the Court's order setting oral argument specifically informed the parties to "focus their arguments" on the application of the *Frankenhauser* factors (among other topics). [Docket No. 38]. Rather, Plaintiff merely offered a blanket assertion that all of the *Frankenhauser* factors weigh in favor of disclosure. This sweeping contention cannot withstand careful consideration, and as a result Plaintiff has forfeited an opportunity to more persuasively argue that the *Frankenhauser* factors should be applied in her favor.

### a) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information

The events surrounding Cole's death has received a great deal of coverage from the local media. The Court agrees with Defendants that disclosure of witness testimony given to IPD during its investigation into Cole's death would have a chilling effect on

---

1. Citing to Privilege Log No. 32, Defendants claim as privileged the "Entire Internal Affairs File." [Defs.' Ex. D]. However, it is unclear whether the IA file in question is solely on the investigation of Cole's death, or the IA file of each individual officer. Therefore, to the extent Defendants assert a blanket privilege as to the entire contents of any IA file, Defendants' objection is overruled.

witnesses coming forward to assist law enforcement in future criminal investigations. The use of confidential witnesses and informants provide law enforcement with a valuable and necessary tool to combat crime. Many witnesses provide law enforcement with information to solve and prevent crimes with the expectation that their identities not be released to the public. Law enforcement's loss of this valuable tool would not only have a chilling effect on witnesses coming forward, but also have the potential to negatively impact the public's safety. *See Hernandez v. Longini,* 1997 WL 754041, *3–4 (N.D.Ill.1997) ("The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."). Thus, this factor weighs in favor of Defendants.

### b) the impact upon persons who have given information of having their identities disclosed

The potential harm to individuals who provided IPD with information in having their identities disclosed "cannot be understated." *Tuite,* 181 F.R.D. at 179. This is particularly true in this case, considering that it involves police officers who could be subjected to criminal indictments. Whether the witnesses' fears are well founded or not, some members of the community may feel intimidated, or even threatened by providing evidence that may implicate a police officer in engaging in criminal activity. This may also negatively impact the DOJ's investigation. The Court finds this perception real, and weighs this factor in favor of non-disclosure.

### c) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure

Plaintiff makes the bald assertion that disclosure of the contested information will not "chill government self-evaluation and improvement." [Pl.'s Br., p. 9]. However, as Defendants correctly note, "revealing law enforcement investigatory tactics through the disclosure of [the contested information] would compromise the effectiveness of IPD law enforcement." [Defs.' Br., p. 12]. If IPD were compelled to release information about its law enforcement techniques, it may compromise its ability to build upon previous successful investigatory methods, or revise or eliminate the ones that fail. The release of IPD's investigatory techniques is akin to a team providing its opponent with its play book. Again, this could compromise the public's safety.

### d) whether the information sought is factual data or evaluative summary

Plaintiff sought to depose Sgt. Prater, and also intends to depose the individual Defendants. Plaintiff's discovery requests also encompass files and notes containing information relating to IPD's investigation into Cole's death. The Court finds this information evaluative rather than factual. For instance, any testimony sought from IPD personnel involved in the Cole investigation is clearly evaluative, and falls squarely within the investigatory privilege. The same is true with any documentation generated by individuals involved in and related to the investigation.

Other than the individual Defendants, Defendants do not object to Plaintiff deposing witnesses not involved in the investigation. In fact, Plaintiff has already deposed Branscumb, a fact witness who drove the IPD paddy wagon on the night in question. Nor do they object to Plaintiff deposing other fact witnesses such as the coroner who performed the autopsy, or the doctor who reviewed the results of the autopsy. [Defs.' Br., pp. 9–10]. *See, e.g., In re Adler, Coleman, Clearing Corp.,* 1999 WL 1747410, *3 (S.D.N.Y.1999) ("Neither the investigatory privilege nor the attorney work product doctrine ordinarily precludes discovery of factual or statistical information, as opposed to mental impressions or opinions. . . ."); *Ross v. Bolton,* 106 F.R.D. 22, 24 (S.D.N.Y.1985) (factual or statistical information not protected by investigatory privilege).

To the extent Plaintiff seeks testimony or information evaluative rather than factual in nature, this factor also weighs in favor of Defendants.

**e) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question**

Plaintiff, who brought this action individually and as the executor of her late son's estate, is not a potential criminal defendant in this action. Neither is a criminal proceeding pending or likely to result from Plaintiff's involvement in this case. This factor weighs in favor of the Plaintiff.

**f) whether the investigation has been completed**

The parties informed the Court at oral argument that the DOJ's investigation, while proceeding slowly, is on-going. For instance, on February 5, 2003, Indianapolis mayor Bart Peterson sent a letter to U.S. Attorney General John Ashcroft inquiring into the status of the investigation. In part, this letter stated:

> ... as the one-year anniversary of Mr. Cole's death approaches, patience has worn thin.. Unfortunately, neither I nor any member of my administration has received an update in more than six months.... Justice that is perceived to be untimely undermines our county's faith in our system and democracy. I respectfully request a prompt resolution of this case.

[Pl.'s Ex. 5]. In addition, the DOJ's investigators came to Indianapolis in May 2003 and indicated to the parties that an investigation was being conducted, but declined to provide a timetable regarding its conclusions. Therefore, the evidence before the Court reveals that the DOJ's investigation remains open. This factor weighs in favor of the Defendants.

**g) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation**

Counsel for Defendants informed the Court at oral argument that IPD has placed the individual Defendants on "administrative duty," but no formal disciplinary action has yet been taken by the department. However, the culmination of the DOJ's investigation may result in criminal indictments against one or more of the Defendants. In addition, the findings of the DOJ's investigation may result in IPD taking disciplinary action against the individual Defendants, including suspension or termination. Thus, this factor weighs in favor of the Defendants.

**h) whether the Plaintiff's suit is nonfrivolous and brought in good faith**

This case involves the untimely death of a man in police custody. The circumstances surrounding Cole's death are vigorously debated, and at this stage seemingly give rise to differing conclusions. Indeed, the length of the on-going DOJ investigation at least suggests that the circumstances surrounding Cole's death merit close scrutiny. Moreover, Defendants acknowledge that this case is not frivolous, or that it was brought in bad faith. This factor weighs in favor of the Plaintiff.

**i) whether the information sought is available through other discovery or from other sources**

Plaintiff claims that the information sought "rests solely in the possession of law enforcement," and that there is "no other matter, means, or source by and from which Plaintiff can obtain the discovery." [Pl.'s Br., p. 11]. In response, Defendants contend that Plaintiff can obtain the information sought by deposing police officers other than Defendants involved in the apprehension of Cole on the night in question. [Defs.' Br., p. 9]. The Court disagrees with this broad prohibition. *See Alexander v. F.B.I.,* 186 F.R.D. 154 (D.D.C.1999) ("across-the-board claims of law enforcement privilege supported only by conclusory statements will not suffice"). Most notably, Plaintiff is entitled to depose the named Defendants. The critical question becomes when these depositions can take place, considering that indictments of some or all of

the named Defendants may flow from the DOJ's on-going investigation.

However, as to information accumulated through IPD's investigation, this information is protected by the investigatory privilege. Notwithstanding, Plaintiff may obtain any factual, non-privileged information by deposing any witnesses or police officers (other than the named Defendants) at the scene, the coroner, the doctor who reviewed the coroner's findings, or any other fact witness.

Evidence presented at oral argument reveals that despite Defendants' assertion of privileges, Plaintiff's discovery efforts continue. Early in this litigation, Plaintiff deposed IPD Officer Branscumb, who drove the paddy wagon occupied by Cole. Most recently, Plaintiff also deposed IPD Officers Mark Fagen and Jayson Campbell, who were dispatched when Cole fled police and were at the scene of Cole's arrest. Plaintiff's counsel also informed the Court he has interviewed several civilian witnesses present at the scene of Cole's apprehension and arrest. In addition, Plaintiff's counsel informed the Court he intends to serve a request to conduct an inspection of Cole's car currently in the custody of IPD. *See, e.g., Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C.Cir.1984) (whether information is available from other sources is a factor in determining degree of litigant's need to obtain it).

As a result, the Court finds this factor favors Defendants.

### j) the importance of the information sought to the Plaintiff's case

The Court concludes that Plaintiff does not need to discover the findings of IPD's investigation in order to prove her case. A wealth of information can be obtained through deposition of fact witnesses such as officers at the scene (other than the named Defendants), any witnesses not in law enforcement, and the coroner and doctor involved in Cole's postmortem medical exam. As previously noted, this discovery is on-going. While the challenged information Plaintiff seeks no doubt could have some value to Plaintiff's case, the Court cannot say that this value is

so significant as to require disclosure. Nevertheless, this element favors the Plaintiff.

### 3. Weighing the *Frankenhauser* Factors

In balancing Plaintiff's need for discovery and the public's interest in preventing disclosure, the Court finds that the majority of the information compiled by IPD in the Cole homicide investigation is protected by the investigatory privilege. Notably, release of the information protected by the privilege would have a chilling effect on witnesses coming forward to assist law enforcement in criminal investigations. Witnesses may even feel intimidated by providing evidence involving alleged criminal activity by a police officer. These documents also encompass some of IPD's law enforcement techniques. As demonstrated by Plaintiff's discovery efforts to date, significant amounts of information sought can be obtained from independent sources such as depositions from fact witnesses like Officers Branscumb, Fagen, and Campbell.

The oral argument held on June 24 further undermined Plaintiff's attempt to rebut Defendants' assertion of a privilege. As noted previously, counsel failed to address the *Frankenhauser* factors, and when prompted by the Court to do so, Plaintiff's counsel broadly asserted that all of the *Frankenhauser* factors supported disclosure. This sweeping conclusory statement undermines Plaintiff's arguments that the law enforcement investigatory privilege does not apply.

Plaintiff also fails to provide evidence that she has a substantial need for the information which may defeat Defendants' assertion of the privilege. As previously noted, much of the information Plaintiff seeks is evaluative rather than factual in nature, and is readily obtainable from another source.

Therefore, in reviewing Defendants' privilege log pertaining to their claims of investigatory privilege, the Court holds that:

(1) Plaintiff may not depose any IPD personnel who investigated the Cole homicide. These individuals are clearly not fact witnesses, and could provide no meaningful information other than that pertaining to the investigation;

(2) Plaintiff may not discover any handwritten notes, reports, probable cause affidavits, e-mails, or other data generated from the Cole homicide investigation. [See Privilege Log Nos. 4–7, 10, 13–16, 17, & 19–29];

(3) Plaintiff may not discover the "Confidential request for subpoena duces tecum for phone records subpoenaed by Grand Jury to Ameritech/SBC" requested by Sgt. Prater [Privilege Log No. 18]. In the event Plaintiff discovered what the grand jury wanted to view concurrent with Sgt. Prater's testimony, it could reveal information the Court has deemed covered by the investigatory privilege; and

(4) Plaintiff may not discover the property room vouchers or disposition orders relating to the Cole investigation. These documents indicate the evidence collected by IPD in its investigation, and may provide information into IPD's investigation. [See Privilege Log Nos. 31–32].

On the other hand, Defendants have not met their burden to demonstrate the investigatory privilege applies to two documents. First, Defendants list in their privilege log an "anonymous letter to [IPD's] East District." [See Privilege Log No. 3]. From this description, it is unclear how this letter relates to the Cole investigation. Second, Defendants reference a "handwritten letter from 'Herb' to Mr. Allen," and a corresponding envelope. [See Privilege Log Nos. 8–9]. Again, the Court is unable to ascertain the identities of "Herb" or "Mr. Allen," let alone how they may relate to the Cole investigation. As a result, Defendants have not carried their burden in showing that these documents are protected by a privilege, and thus Plaintiff may discover these documents. *See, e.g., Doe,* 175 F.R.D. at 514–15, *citing Kelly v. City of San Jose,* 114 F.R.D. 653, 669 (N.D.Cal.1987) (the government "must explain with particularity the reasons that each document or class of documents is privileged. Unless the government, through competent declarations, shows the court what law enforcement interests would be harmed, how disclosure under a protective order would

cause the harm, and how much harm there would be, the court cannot conduct a meaningful balancing analysis."). In addition, as noted above, Defendants attempt to shield the "Entire Internal Affairs File" is unavailing because it is overbroad and does not specifically state what documents within this file they seek to protect. [See Privilege Log No. 32].

Accordingly, with regard to Defendants' claim of investigatory privilege, Defendants' motion for a protective order is GRANTED IN PART and DENIED IN PART.

### C. Deliberative Process Privilege

■ The deliberative process privilege covers "documents reflecting advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Anderson v. Cornejo,* 2001 WL 826878, *1–2 (N.D.Ill.2001), *quoting Department of Interior v. Klamath Water Users Protective Association,* 532 U.S. 1, 9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001). The privilege protects communications that are part of the decision-making process of a governmental agency. *In re Bank One Securities Litigation, First Chicago Shareholder Claims,* 209 F.R.D. 418, 426 (N.D.Ill.2002), *citing NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150–52, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). For this privilege to apply, the document must be "pre-decisional" and "deliberative." *Becker v. I.R.S.,* 34 F.3d 398, 403 (7th Cir. 1994).

■ In this case, Defendants contend the deliberative process privilege applies to protect the following information:

(1) Any interdepartmental communications regarding the death of Cole or investigation thereof. [Privilege Log Nos. 5–7, 13–15, & 20];

(2) The entire IPD Internal Affairs file. [Privilege Log Nos. 11, 12, & 32];

(3) Any notes taken by the investigating detective or officials of the IPD. [Privilege Log Nos. 19, 21–25, & 29]; and

(4) E-mail messages regarding the investigation into Cole's death. [Privilege Log Nos. 26–28].

[Defs.' Br., p. 17].[2]

Although no court in the district has expressly held that the deliberative process privilege applies to municipal governmental entity, Defendants argue that one exists. *See, e.g., Government Suppliers Consolidating Services, Inc. v. Bayh*, 133 F.R.D. 531, 534 (S.D.Ind.1990) ("Although the privilege has been applied most often to members of the federal executive branch, it has come to be applied to the deliberations of state governmental actors as well.").[3] However, some courts, including one court in this circuit, have concluded that a deliberative process privilege has not been recognized by the federal common law for municipal agencies such as IPD. *See Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 502 (N.D.Ill.2001) ("we cannot find [the law] has established the existence of a federal common law deliberative process for municipal agencies."); *Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 483–84 (2d Cir.1999) (FOIA's deliberative process privilege applies to federal agencies only); *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D.Cal.1995) (court suggested that the deliberative process privilege is generally not applicable to documents relating to internal police investigations into allegations of police misconduct).

This Court need not definitively decide here whether a municipal agency such as IPD enjoys a deliberative process privilege. This is because in her brief and at oral argument, Plaintiff did not contest that this

privilege was available. Plaintiff has thus waived any argument regarding the propriety of whether the Defendants may assert this privilege. Rather, Plaintiff contends that there has been no "deliberation" so as to allow the Defendants to avail themselves to this privilege. The record reflects otherwise. As counsel for the individual Defendants noted at oral argument, deliberation on behalf of IPD continues as exhibited by the department placing the officers involved in Cole's arrest on administrative duty. In addition, as the DOJ's investigation is pending, there is the possibility that criminal indictments could flow as a result of the DOJ's findings. Likewise, IPD could still issue further disciplinary action against the individual Defendants. Therefore, under these circumstances the Court finds that Defendants have successfully raised the deliberative process privilege.

Accordingly, Defendants' motion for a protective order asserting the deliberative process privilege is GRANTED.[4]

## D. Defendants' Motion to Stay

### 1. Standard

While the Court has the inherent power to stay its proceedings, the Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. *See Benevolence Intern. Foundation, Inc. v. Ashcroft*, 200 F.Supp.2d 935, 938 (N.D.Ill. 2002), *citing SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C.Cir.1980). However, a court may use its discretion to determine

---

**2.** With the exception of Privilege Log Nos. 11 & 12, Defendants claim all of these documents also fall under the law enforcement investigatory privilege.

**3.** In support of their position that the deliberative process privilege applies to municipal agencies, at oral argument Defendants relied on two cases from the Southern District of New York, *Cruz v. Kennedy*, 1998 WL 689946 (S.D.N.Y. 1998), and *Wahad v. F.B.I.*, 132 F.R.D. 17 (S.D.N.Y.1990). However, Defendants' reliance on these two cases is flawed. A thorough reading of these cases simply does not support Defendants' contention.

**4.** The Court has reviewed Magistrate Judge Shields' unpublished entry in *Leaf v. Cottey*,

IP02–433 C M/S (S.D.Ind. Apr. 28, 2003) (declining to apply the law enforcement investigatory and deliberative process privileges). *Leaf*, however, is distinguishable from the case at bar. With regard to both the law enforcement investigatory privilege and the deliberative process privilege, *Leaf* held that defendants were not entitled to the privileges because the Sheriff's Department did not designate an agency representative to submit an affidavit asserting the privilege. Rather, defendants' attorney improperly asserted the privilege. *Id.* at pp. 2–5. In contrast, in the case at bar, Defendants' properly asserted the privilege through the affidavit of Deputy Chief Timothy Foley. [Defs.' Ex. A]. In addition, in *Leaf*, there was no on-going investigation into possible criminal wrongdoing of the individual Defendants.

whether to stay civil proceedings when the "interests of justice" require such action. *Smith v. Bravo,* 2000 WL 1051855, *4 (N.D.Ill.2000), *citing Afro–Lecon, Inc. v. U.S.,* 820 F.2d 1198, 1202 (Fed.Cir.1987). *See also Bruner Corp. v. Balogh,* 819 F.Supp. 811, 813 (E.D.Wis.1993), *quoting Dresser Industries,* 628 F.2d at 1375 ("Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem [ ] to require such action . . . .") (internal citations quotations omitted). The ultimate question, therefore, is "whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings." *Cruz v. County of Dupage,* 1997 WL 370194, *1 (N.D.Ill.1997).

■ In deciding whether to stay civil proceedings where a similar criminal action is brought before the completion of the civil proceedings, a court may consider a variety of factors. They include: (1) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the plaintiff of a delay; (2) the burden which any particular aspect of the proceedings may impose on the defendant; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in pending civil and criminal litigation. *See Benevolence,* 200 F.Supp.2d at 938, *citing Nowaczyk v. Matingas,* 146 F.R.D. 169, 174 (N.D.Ill.1993). This involves the Court balancing the civil plaintiff's right to prepare the case promptly against the public interest in withholding full disclosure sought by the civil plaintiff. *See Campbell v. Eastland,* 307 F.2d 478, 490 (5th Cir.1962).

### 2. Defendants Are Entitled to a Limited Stay of Discovery

■ Defendants state they are concerned about the effect the civil proceeding may have on potential criminal indictments that may flow from a federal grand jury investigation. [Defs.' Br., p. 19]. Applying the five elements set forth in *Benevolence,* and balancing Plaintiff's right to prepare her case promptly against the public interest in withholding full disclosure, the Court finds that a limited stay of discovery is reasonable and appropriate.

As to Plaintiff's interest in proceeding expeditiously, Plaintiff does not demonstrate irreparable harm or prejudice if the Court grants a limited stay. As noted above, Plaintiff may continue to proceed with discovery, including additional depositions of fact witnesses not involved in the investigation into the Cole homicide. *See, e.g., Cruz,* 1997 WL 370194, at *2, *quoting Dresser Indus.,* 628 F.2d at 1376 ("If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it . . . . In some such cases, however, the courts may adequately protect the government and the private party by merely deferring civil discovery or entering an appropriate protective order.") (internal citations omitted).

Defendants' interests could be substantially harmed if a limited stay is not granted. For instance, utilizing the liberal rules of civil discovery, Plaintiff could obtain information that may substantially harm Defendants' interests if criminal indictments are handed down. If a limited stay is not granted, the Court finds that Defendants would be faced with an unnecessary dilemma: surrender their Fifth Amendment rights against self-incrimination, or not testify and risk the possibility of adverse inferences being taken from the assertion of these Fifth Amendment rights, or possibly even civil sanctions and/or the entry of a default judgment. A limited stay of discovery will eliminate this quandary. *See, e.g., Cruz,* 1997 WL 370194, *1–2, *quoting Dresser Indus.,* 628 F.2d at 1376 ("the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter. The noncriminal pro-

ceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination ....") (internal citations omitted); *Campbell,* 307 F.2d at 487 ("[a]dministrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims and liabilities."); *Nowaczyk v. Matingas,* 146 F.R.D. 169, 174 (N.D.Ill.1993) ("A stay of civil discovery is sometimes appropriate to protect competing interests arising from parallel civil and criminal proceedings involving the same subject matter").

Permitting certain discovery to proceed, such as depositions of the individual Defendants, would be an inefficient use of resources. For instance, counsel for the individual Defendants stated at oral argument that a Fifth Amendment objection would be forthcoming in the event these officers were compelled to appear for depositions in light of the DOJ's on-going criminal investigation. Further, the Court will not suffer an inconvenience if a limited stay is granted.

The public also has an important interest in a potential, untainted criminal prosecution that could arise from the Cole's death. Mayor Peterson's letter to Attorney General Ashcroft expressed this interest in noting Peterson's frustration on behalf of the Indianapolis community and his administration regarding the DOJ's unresolved and seemingly endless investigation. [Pl.'s Ex. 5].

In sum, weighing these competing interests, the Court finds that a limited stay is necessary to protect the Defendants' Fifth Amendments rights against self-incrimination should criminal indictments flow from the DOJ's pending criminal investigation. In light of this, the Court grants Defendants a limited stay of discovery.[5] The following areas of discovery shall be off limits for a period of 90 days from the issuance of this entry:

(1) Any statements Defendants provided to IPD's homicide branch. [Privilege Log No. 33];

(2) Audiotapes generated in the course of IPD's investigation;

(3) Any polygraph test results of the Defendants;

(4) Letter from Officer Morton Gallagher to Mayor Peterson. [Privilege Log No. 1];

(5) Letter from Mayor Peterson to Officer Gallagher. [Privilege Log No. 2];

(6) Any depositions that seek the contents of the Defendants' statements; and

(7) Depositions of the Defendants.

Accordingly, Defendants' motion for a limited stay of discovery is GRANTED. The parties shall appear by telephone for a status conference on September 25, 2003 at 1:30 p.m. to determine whether the DOJ has concluded its investigation and whether the temporary stay will be lifted.

### III. Conclusion

Defendants' motion for a protective order is GRANTED IN PART and DENIED IN PART. The motion for a protective order is GRANTED to the extent that the following discovery is protected by the law enforcement investigatory and deliberative process privileges:

(1) Depositions of IPD personnel who investigated the Cole homicide;

(2) Any handwritten notes, reports, probable cause affidavits, e-mails, or other data generated from the Cole homicide investigation. [See Privilege Log Nos. 4–7, 10, 13–16, 17, & 19–29];

(3) The "Confidential request for subpoena duces tecum for phone records subpoenaed by Grand Jury to Ameritech/SBC" requested by Sgt. Prater [Privilege Log No. 18];

(4) IA No. 02–027 Transcript of Dr. John Pless, and John Lineham. [Privilege Log Nos. 11 & 12]; and

---

5. The Court finds that the 90–day period is reasonable and appropriate, considering that at the date of this entry the Department of Justice has not concluded its investigation or reached any findings. At the end of this 90–day stay, the Court will reassess whether the stay is still needed.

(5) The property room vouchers or disposition orders relating to the Cole investigation.

The motion for a protective order is DENIED in regard to the following documents:

(1) "Anonymous letter to [IPD's] East District." [See Privilege Log No. 3];

(2) "Handwritten letter from 'Herb' to Mr. Allen," and a corresponding envelope. [See Privilege Log Nos. 8–9]; and

(3) Unless specific documents are addressed in this entry, Defendants' attempt to protected the "Entire Internal Affairs File." [See Privilege Log No. 32].

Defendants shall produce these documents no later than July 11, 2003.

In addition, Defendants' motion for a limited stay of discovery is GRANTED. The following areas of discovery shall be off limits for a period of 90 days for the issuance of this entry:

(1) Any statements Defendants provided to IPD's homicide branch. [Privilege Log No. 33];

(2) Audiotapes generated in the course of IPD's investigation;

(3) Any polygraph test results of the Defendants;

(4) Letter from Officer Morton Gallagher to Mayor Peterson. [Privilege Log No. 1];

(5) Letter from Mayor Peterson to Officer Gallagher. [Privilege Log No. 2];

(6) Any depositions that seek the contents of the Defendants' statements; and

(7) Depositions of the Defendants.

The parties are ORDERED to appear by counsel for a telephonic status conference on **September 25, 2003 at 1:30 p.m.** to discuss further disposition of this case, including whether the limited stay of discovery will be lifted.

So ordered.