ATTORNEYS FOR APPELLANT
Adam J. Sedia
Dyer, Indiana

ATTORNEYS FOR APPELLEE
Edward W. Hearn
Crown Point, Indiana

# In the
# Indiana Supreme Court



No. 45S03-1309-CT-619

JOSEPH D. HARDIMAN AND JAKETA L.
PATTERSON, AS CO-ADMINISTRATORS OF
THE ESTATE OF BRITNEY R. MEUX,
DECEASED,

> *Appellants/Cross-Appellees*
> *(Plaintiffs below),*

v.

JASON R. COZMANOFF,

> *Appellee/Cross-Appellant*
> *(Defendant below).*

Appeal from the Lake Superior Court, No. 45D11-1209-CT-214
The Honorable Diane Kavadias Schneider, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1210-CT-437

**March 12, 2014**

**Massa, Justice.**

"Inevitably, in civil cases where related criminal charges are involved, tension will arise between plaintiffs' rights to a just and timely adjudication and defendants' rights to refuse to answer under the Fifth Amendment upon a reasonable fear of prosecution." Nat'l Acceptance Co. of Am. v. Bathalter, 705 F.2d 924, 932 (7th Cir. 1983) (internal citation omitted). The case we address today involves just this sort of tension; the civil trial court granted a limited stay of

discovery against the defendant, but ordered him to respond to the plaintiff's complaint.  Both sides appealed, and we now affirm the trial court in all respects.

**Facts and Procedural History**

On March 6, 2012, correctional officer Britney Meux was jogging with three co-workers when she was hit by a car.  The driver fled the scene, and Meux later died from her injuries.  Three days later, the State charged the alleged driver, Jason R. Cozmanoff, with thirteen crimes, including one count of reckless homicide as a Class C felony and three counts of criminal recklessness resulting in serious injury, all as Class D felonies.

A few weeks later, Meux's Estate sued Cozmanoff for wrongful death, alleging he was "negligent, reckless, and guilty of gross negligence and/or willful and wanton misconduct." Appellant's App. at 12.  The Estate began the discovery process on April 27 by serving Cozmanoff with interrogatories and requests for production and by noticing his deposition.

This put Cozmanoff in a difficult position; if he were to invoke the Fifth Amendment and refuse to comply with the Estate's discovery requests, the civil jury could infer he is liable for causing Meux's death.  Gash v. Kohm, 476 N.E.2d 910, 913 (Ind. Ct. App. 1985) ("Although the refusal to testify in a civil case cannot be used against the one asserting the privilege in a subsequent criminal proceeding, the privilege against self-incrimination does not prohibit the trier of fact in a civil case from drawing adverse inferences from a witness'[s] refusal to testify." (internal citations omitted)).  On the other hand, if Cozmanoff were to provide discovery responses and permit his deposition to be taken, the State could use his testimony and responses against him in his criminal trial.

Cozmanoff, seeking a middle ground between the rock and the hard place, moved to stay the entire civil case pending the resolution of his criminal prosecution, citing his Fifth Amendment privilege.  The Estate opposed his motion, arguing (1) Cozmanoff's criminal case

might not be finally resolved for years, (2) discovery was necessary to identify other potential tortfeasors who must be joined before the running of the two-year statute of limitation, and (3) the stay would offend Article 1, § 12 of the Indiana Constitution, which guarantees "Justice shall be administered freely . . . and without delay." After the hearing, the trial court granted a limited stay of discovery as to Cozmanoff only, but it also entered an order requiring him to answer the complaint within 30 days.

Both parties moved to certify the trial court's ruling for interlocutory appeal, and the trial court so certified it. In a published opinion, the Court of Appeals reversed the stay but affirmed the requirement that Cozmanoff file an answer. Hardiman v. Cozmanoff, 989 N.E.2d 799, 805 (Ind. Ct. App. 2013).

We granted transfer, thereby vacating the opinion below. Hardiman v. Cozmanoff, 994 N.E.2d 732 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

### Standard of Review

We trust the trial court to exercise sound discretion in myriad matters, including whether to grant or deny a party's motion for stay, and we review its ruling on that motion for abuse of that discretion. Fry v. Schroder, 986 N.E.2d 821, 822–23 (Ind. Ct. App. 2013). We will affirm so long as we can find some evidence or reasoning to support the decision, and we will reverse only if we find the decision "is clearly erroneous, against the logic and effect of the facts before it and the inferences which may be drawn from it." Id. at 823.

### The Trial Court Did Not Abuse Its Discretion by Ordering the Limited Stay.

Cozmanoff argues the entire civil case must be stayed to protect his right against self-incrimination, while the Estate contends its own interest in an expeditious end to its lawsuit is

3

paramount. It is a bedrock principle of our criminal justice system that "no person . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; see also Ind. Const. art. 1, § 14 ("No person, in any criminal prosecution, shall be compelled to testify against himself.").[1] The Fifth Amendment, incorporated to the States by the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 6 (1964), "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). A civil defendant who chooses to avail himself of this protection, however, does so at his peril: "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); see also Morgan v. Kendall, 124 Ind. 454, 24 N.E. 143, 145 (1890) (holding a defendant's invocation of his Fifth Amendment privilege during his trial testimony "was a matter proper to be considered by the jury").

But "even where privileges as important as the Fifth Amendment privilege against self-incrimination are implicated, courts in civil proceedings have taken steps to ensure that the litigation proceeds in a manner consistent with the interests of justice." State v. Int'l Bus. Mach. Corp., 964 N.E.2d 206, 211–12 (Ind. 2012). One such step is the exercise of the court's inherent power to stay its proceedings. Jones v. City of Indianapolis, 216 F.R.D. 440, 450 (S.D. Ind. 2003). Although it is under no constitutional obligation to do so, the court has discretion to

---

[1] Cozmanoff correctly points out that, if we thought it appropriate, we could perform a separate and independent analysis of this issue under Article 1, § 14 of our state constitution. But as we resolve this issue in his favor under the federal standard, we leave the idiosyncrasies of Section 14 for another day. Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc., 988 N.E.2d 250, 254 (Ind. 2013).

4

impose a stay when the "interests of justice" so require. Id. at 450–51. When making that determination, the court may consider

> (1) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the plaintiff of a delay; (2) the burden which any particular aspect of the proceedings may impose on the defendant; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in pending civil and criminal litigation.[2]

Id. at 451; Fry, 986 N.E.2d at 823. The trial court is not limited to a consideration of only those factors, however, and courts in other jurisdictions have noted the degree of similarity between the issues in both cases is frequently the most important factor. See, e.g., Ex parte Weems, 711 So. 2d 1011 (Ala. 1998) (affirming the trial court's denial of a stay because the civil and criminal cases turned on different issues, where ex-husband was charged with murdering his ex-wife's private investigator and sued his ex-wife for negligent hiring/supervision). Finally, courts frequently consider the status of the parallel criminal proceeding in determining whether a stay is warranted. See, e.g., Aspen Fin. Servs., Inc. v. Dist. Ct., 289 P.3d 201, 207 (Nev. 2012) (noting pre-indictment stays are generally denied because the risk of self-incrimination is less while the potential for lengthy delay is great); Ex parte Ebbers, 871 So. 2d 776, 790 (Ala. 2003) (listing, as

---

[2] The Estate argues, as a threshold matter, that Cozmanoff is not entitled to a stay because he "failed to designate adequate facts that would demonstrate that any responses to pleadings and discovery would necessarily result in compelled testimony." Appellant's Br. at 16. But that is the standard for *asserting* the privilege. Bathalter, 705 F.2d at 927 (noting the "validity of the assertion" of the Fifth Amendment privilege "hinges not on the witness's say so alone: the trial judge must determine whether the witness's silence is justified."). In contrast, the entire point of Cozmanoff's motion for stay is to *avoid* having to assert the privilege at all. Thus, Cozmanoff is not required to designate such facts in his motion for stay.

one of *eight*[3] factors for consideration, the "status of the criminal case, including whether the party moving for the stay has been indicted.").

Here, the trial court heard argument and carefully considered the burden on each of the respective parties. As to the plaintiff's interest, at the hearing in July 2012, the Estate argued it needed to depose Cozmanoff to determine whether he intended to assert a nonparty defense and learn the identity of any potentially liable nonparties before the statute of limitation expired. But Cozmanoff's counsel pointed out his criminal trial was set for February 2013—more than one year prior to the March 2014 expiration of the statute of limitation—giving the Estate more than a year to conduct discovery and add any additional defendants. And Cozmanoff's counsel also stated the motion for stay was "concerned with protecting the Defendant himself" and did not "address the other investigation that the Plaintiff might want to do." Appellee's App. at 31. Indeed, the trial court noted that the limited stay left the Estate free to pursue discovery against anyone except Cozmanoff. Finally, Indiana law requires Cozmanoff to plead any nonparty defense at least forty-five days before the expiration of the statute of limitation, Ind. Code § 34-51-2-16 (2008), so the Estate would have at least forty-five days to join any such nonparty as a defendant.

As to the burden on the defendant, Cozmanoff's counsel stated Cozmanoff would assert his Fifth Amendment privilege if deposed, and both parties acknowledged it could be used against him at trial. That adverse inference—and the resulting increased risk of losing the civil suit—is constitutionally permissible, but it is not, as the Estate argues, a minor matter.[4] What is

---

[3] The eighth and final Ebbers factor is "the timing of the motion to stay." Ebbers, 871 So.2d at 790. As Cozmanoff's motion was made only one month after the Estate served him with its initial discovery requests, the Estate concedes it was prompt and thus timing is a neutral factor in this case. We agree.

[4] The Estate cites precedent from our Court of Appeals for the proposition that "the 'increased possibility' that a criminal defendant would be held liable in civil proceedings is not a detriment that penalizes the criminal defendant." Appellant's Br. at 17 (quoting Gash, 476 N.E.2d at 913). In Gash, parents sued the

more, although the "normal rule in a criminal case is that no negative inference from the defendant's failure to testify is permitted," Mitchell v. United States, 526 U.S. 314, 328 (1999), Cozmanoff correctly points out his assertion of his Fifth Amendment privilege in civil discovery could harm his defense in the criminal proceeding. For instance, if Cozmanoff were deposed and asserted his privilege in response to certain questions but not others, a savvy prosecutor could guess Cozmanoff's defense strategy. Accord Jones, 216 F.R.D. at 451 (noting a limited stay was necessary to prevent Plaintiff from "utilizing the liberal rules of civil discovery [to] obtain information that may substantially harm Defendants' interests if criminal indictments are handed down."); Sec. & Exch. Comm'n v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980) (noting that "where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter," failure to stay the noncriminal proceeding "might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.").

---

defendant for the wrongful death of their daughter after the county prosecutor found the evidence insufficient to support criminally charging the defendant. Id. at 911. At his civil trial, in open court, the defendant refused to answer questions based on his Fifth Amendment privilege. Id. at 912. Accordingly, the jury inferred he was liable and returned a verdict in plaintiffs' favor. Id. The defendant appealed, and a panel of our Court of Appeals affirmed, stating: "The only detriment suffered by [the defendant] was the increased possibility that he would be found civilly liable for damages . . . To consider such a detriment in the same light as the sanctions applied for exercising the fifth amendment privilege . . . is simply too tenuous." Id. at 913 (internal citations omitted).

Thus, Gash stands only for the well-established rule that an increased risk of civil liability does not rise to the level of an impermissible burden on a constitutional right—unlike the loss of a job, for example. See Garrity v. State of N.J., 385 U.S. 493, 500 (1967) ("We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic."). We decline the Estate's invitation to adopt a broader reading of Gash that would prohibit our trial courts from considering the adverse inference prejudicial to the defendant when considering a motion to stay civil discovery.

Regarding the efficient use of judicial capital, we believe the civil court was appropriately protective of its own calendar. During the hearing, the trial judge addressed the possibility that a continuance in Cozmanoff's criminal case would keep the stay in place longer than anticipated: "we can't drag this on down here because of delays upstairs in the criminal division." Appellee's App. at 32. Indeed, the court made clear that it had the authority to revisit the propriety of the stay at any time and, if necessary, to lift it. We note also that if Cozmanoff were found guilty, his conviction may have some preclusive effect on the issue of his civil liability, thus conserving judicial resources in that litigation. See Kimberlin v. DeLong, 637 N.E.2d 121, 125 (Ind. 1994) (holding, in a civil action for wrongful death, the trial court was correct to grant summary judgment on the issue of the defendant's liability based on the application of offensive collateral estoppel, where the defendant had a full and fair opportunity to litigate the charges against him in his criminal trial and subsequent appeals).

Non-parties do have an interest in being promptly discovered and joined in the action, but that interest can still be served under this limited stay. Although the Estate may not be able to learn the identity of those nonparties by deposing Cozmanoff, it is still free to do so by conducting other discovery, or by investigating outside the context of formal discovery. Thus, the stay does not entirely prevent the Estate from pursuing its case.

Public interest is, we find, a neutral factor; this is not the sort of case in which the public has any special interest. See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd., 7 F. Supp. 2d 523, 529 (D.N.J. 1998) ("Courts have denied stays where the civil case, brought by a government agency, was intended to protect the public by halting the distribution of mislabeled drugs . . . or the dissemination of misleading information to the investing public" (citing United States v. Kordel, 397 U.S. 1, 11 (1970); Dresser Indus., 628 F.2d at 1377)). Here, as in Walsh, "there is no tangible harm to the public from these alleged [acts] that could not be remedied by the criminal investigation." Id. at 529.

The fact that both cases concern identical issues weighs strongly in favor of a stay. The State charged Cozmanoff with thirteen crimes, including reckless homicide in relation to Meux's

8

death.  "A person who recklessly kills another human being commits reckless homicide."  Ind. Code § 35-42-1-5 (2008 & Supp. 2013);[5] see also Gibbs v. State, 677 N.E.2d 1106, 1108–09 (Ind. Ct. App. 1997) ("To sustain a conviction of Reckless Homicide, there must be evidence of probative value supporting each of three elements[:] causation, that the act resulting in the homicide was voluntary, and that the defendant's conduct was reckless and not merely negligent." (quoting Taylor v. State, 457 N.E.2d 594, 597 n.6 (Ind. Ct. App. 1983))).  In its complaint, the Estate alleged Cozmanoff

> was the operator of a motor vehicle proceeding along 93rd Avenue, and was at fault, negligent, reckless, and guilty of gross negligence and/or willful and wanton misconduct in causing his vehicle to strike plaintiffs' decedent . . .[,] fled the scene of the accident[, and] as a direct and proximate result of the Defendant's acts or omissions, Plaintiffs' decedent, Britney R. Meux, was critically injured and subsequently died.

Appellant's App. at 12.  Thus, the civil and criminal cases turn on the same three issues: whether Cozmanoff hit Meux with his car, whether he was reckless when he did so, and whether his action caused her death.

Finally, the Estate claims the stay offends our Indiana Constitution, which provides "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.  Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."  Ind. Const. art. 1, § 12.  When two adverse parties each assert different constitutional interests, the court must consider each interest "in the light of the other, and in the context of the issues and interests at

---

[5] As part of the recent comprehensive criminal code revision, this section was amended effective July 1, 2014.  P.L. 158-2013, § 415, 2013 Ind. Acts 1402.  We cite herein to the version in effect at the time of the incident giving rise to the litigation, but we note that the revision did not alter the statutory language we quote above.

stake." Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 332 (1964). Based upon our analysis above, we are satisfied the trial court did that here, and we decline the Estate's invitation to hold that Article 1, § 12 curtails the trial court's discretion to impose this limited stay.

**The Trial Court Did Not Abuse Its Discretion By Requiring Cozmanoff to Answer the Complaint.**

Cozmanoff, on cross-appeal, argues the trial court erred by ordering him to answer the Estate's complaint. He makes a compelling case that filing an answer exposes him to the same sort of prejudice that deposing him would. Indeed, courts in other jurisdictions have acknowledged a stay of discovery is frequently coupled with a stay of responsive pleadings or of the entire civil case pending resolution of the criminal prosecution. See, e.g., Crawford & Sons, Ltd. v. Besser, 298 F. Supp. 2d 317, 320 (E.D.N.Y. 2004) (granting a stay "of all the proceedings in this action, including the service of the defendants' answers, pending the resolution of the criminal action."); Holden Roofing, Inc. v. All States Roofing, Inc., 06-3406, 2007 WL 1173634 (S.D. Tex. Apr. 18, 2007) (granting a stay of all proceedings).

But the trial court's decision in this case—to stay discovery against Cozmanoff but still require him to file an answer—is not unprecedented. See Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 11 (D. Conn. 2002) (finding, where defendant argued he would "be put at risk not only by being subject to discovery . . . but also by having to answer the complaint," that a stay of discovery was adequate to protect his interest and a stay of the entire civil matter was unnecessary). "While sometimes it is appropriate to stay an entire civil proceeding, rather than just as to the party moving for the stay, there are also situations where the right against self-incrimination can be adequately protected while the civil case proceeds in some limited way." Ebbers, 871 So. 2d at 788. The trial court concluded this case fell into the latter category, and we are not convinced that conclusion was an abuse of discretion.

10

Even if the answer requirement does not offend the federal constitution, Cozmanoff argues, we may nevertheless find it incompatible with our own state constitutional protection against self-incrimination. But we have stated before that

> [e]ven if no national consensus has emerged on this point, interpretation of a provision of our state constitution consistent with precedent under its federal counterpart is appropriate where the tools for constitutional interpretation point in that direction. This is true of the core value of the right not to incriminate oneself.

Ajabu v. State, 693 N.E.2d 921, 932 (Ind. 1998) (internal citations and footnote omitted).[6] Thus, we decline Cozmanoff's invitation to revisit this conclusion, and we affirm the trial court's order that Cozmanoff answer the complaint.

## Conclusion

After making its decision, the trial court acknowledged the stay was not a perfect solution: "I'm not at all satisfied with this ruling. But I think it's the best I can do right now."

---

[6] To support his argument, Cozmanoff quotes one of our prior decisions, in which we said: "In order for the privilege [against self-incrimination] to be fully realized, it is essential that no aspersions whatsoever be cast upon the accused for his failure to testify." Hill v. State, 267 Ind. 480, 485, 371 N.E.2d 1303, 1306 (1978) (quoting Gross v. State, 261 Ind. 489, 491, 306 N.E.2d 371, 372 (1974)). Hill was a criminal case in which the defendant challenged his conviction for armed robbery by arguing, among other things, that the following jury instruction was improper: "In this case the defendant has not testified in his own behalf. It is your duty under our law not to comment upon, refer to, or in any manner consider this fact in making of any verdict you may return in this cause." Id. at 484, 371 N.E.2d at 1305. We noted the federal courts at the time were split as to whether such an instruction constituted reversible error, so we relied upon our own precedent, Gross, and reversed the conviction. Id. at 484–85, 371 N.E.2d at 1305–07. Although Hill refers to both the federal and state protections against self-incrimination, it is unclear which underlies our holding. But because that holding was predicated upon Gross, which dealt solely with the federal Fifth Amendment, we conclude Hill was also a Fifth Amendment case rather than a Section 14 case. And Hill did not address "aspersions" outside the criminal context, so we do not find its reasoning particularly instructive here.

Appellee's App. at 34. In light of all the circumstances we have discussed above, we cannot disagree. Our ruling today does not mean the trial court was constitutionally required to impose the stay;[7] simply that it did not abuse its discretion by so doing. Indeed, were we to hold otherwise, it would be hard to imagine a set of circumstances in which it would be an appropriate exercise of a trial court's discretion to order a stay for a defendant in Cozmanoff's position.

We therefore affirm the trial court and remand this case for further proceedings consistent with our opinion today.

Dickson, C.J., Rucker, David, and Rush, JJ., concur.

---

[7] Cozmanoff urges us to adopt this rule, pointing out that although our federal colleagues have not done so under the Fifth Amendment, we may nonetheless do so under the Fifth Amendment or under Article 1, § 14 of our own Indiana Constitution. Hill, 267 Ind. at 485, 371 N.E.2d at 1305. We find such a broad holding unnecessary to resolve the issues before us today.