James G. CLARK and Larry A. Biddle, III, Appellants–Defendants,

v.

Donald SIMBECK and Janet Simbeck, Appellees–Plaintiffs.

No. 71A03–0801–CV–5.

Court of Appeals of Indiana.

Oct. 20, 2008.

Ronald L. Sowers, Bremen, IN, Attorney for Appellants.

Michael J. Anderson, Sean M. Surrisi, South Bend, IN, Attorney for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Defendants–Appellants James G. Clark ("Clark") and Larry A. Biddle, III ("Biddle") appeal the trial court's judgment in favor of Plaintiffs–Appellees Donald Simbeck (Donald) and Janet Simbeck ("Janet"). We affirm in part and reverse and remand in part.

Clark and Biddle raise three issues for our review, which we renumber and restate as four issues (Donald and Janet

raise a single issue, which we state as the final issue):

I. Whether the trial court erred in denying Clark and Biddle's motion for continuance.

II. Whether the trial court erred in suggesting that Clark and Biddle admit liability, waive a jury trial, and proceed with a bench trial on damages.

III. Whether the trial court's compensatory damage award was excessive.

IV. Whether the trial court's punitive damage award was excessive.

V. Whether appellate attorney fees and charges should be awarded.

On December 9, 2003, Clark and Biddle had been drinking with friends. When they ran out of cigarettes, they decided to go to a local store to buy more. After they left the store, Clark, who was driving the vehicle, began following a vehicle driven by Donald and occupied by Janet. Clark's vehicle followed Donald's vehicle so closely that Donald and Janet became concerned. At some point, Clark engaged Donald in a game whereby Clark pulled alongside Donald and slowed down or increased speed to confuse Donald. Finally, Clark passed Donald and proceeded down the road. His vehicle weaved from side to side, possibly endangering other drivers, and Janet called the police. Janet told Donald to follow Clark and Biddle until the police arrived. She also told Donald not to drive to their home to prevent Clark and Biddle from learning of its location.

When Clark stopped his vehicle in front of his friend's house, Donald stopped behind the vehicle and exited his vehicle. While standing next to his vehicle, Donald yelled at Clark and Biddle and asked them what they were doing. While Clark addressed Donald, Biddle snuck up behind Donald and hit him in the head. Donald fell to the ground, and Clark and Biddle kicked him in the head an estimated 30–50 times, causing severe injuries to Donald's face and head. They also struck Janet.

As a result of their conduct, Clark and Biddle were arrested and charged with multiple criminal counts. Clark and Biddle ultimately pled guilty to two counts of battery resulting in serious injury, Class C felonies, and one count of battery, a Class A misdemeanor.

Donald and Janet subsequently filed a complaint and jury demand. On the day of trial, Donald and Janet agreed to waive their jury demand after Clark and Biddle admitted liability. A bench trial was held on damages, and the trial court issued an order awarding damages to Donald of $738,500.00, which included Donald's "medical expenses, pain and suffering, scarring, and disfigurement." Appellants' App. at 24. The trial court also awarded $26,000.00 to Janet, which included Janet's "physical injuries, lost wages and loss of companionship of her husband." *Id.* Finally, the trial court assessed punitive damages of $60,000.00 to each of the defendants because of "the egregious and felonious conduct of the Defendants...." *Id.* Clark and Biddle now appeal.

## I.

Clark and Biddle argue that the trial court clearly erred when it denied their motion for continuance. The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Trinity Baptist Church v. Howard,* 869 N.E.2d 1225, 1230 (Ind.Ct.App.2007), *trans. denied.* An abuse of discretion occurs when a trial court reaches a conclusion that is against the logic and the natural inferences that

can be drawn from the facts and circumstances before the trial court. *Id.*

In the present case, an attorney entered an appearance for Clark and Biddle on February 18, 2004. He represented the pair until he withdrew his appearance on July 13, 2006, after an apparent disagreement with his clients. The trial court noted that Clark and Biddle had not hired another attorney between the first attorney's withdrawal and February of 2007. Accordingly, on February 5, 2007, the trial court sent notice of a status conference set for February 21, 2007. At this conference, the trial court "cautioned and encouraged" Clark and Biddle to retain replacement counsel. Appellants' App. at 38. Even though the trial court indicated that a jury trial was set for June 25, 2007, neither Clark nor Biddle gave any indication that the hiring of counsel was imminent. By the time of the pre-trial conference on June 12, 2007, Clark and Biddle still had not hired counsel, and they did not explain their delay to the trial court.

On June 22, 2007, the Friday before the Monday trial setting, an attorney appeared as replacement counsel and made a request for a sixty-day continuance. Noting the last minute hiring of the attorney, the trial court denied the motion.

Indiana Trial Rule 53.5 provides that a trial "may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence...." Here Clark and Biddle argue they did not obtain counsel until the eve of trial because they did not have the funds to get a "good lawyer." Appellants' App. at 52. We cannot say that the trial court abused its discretion in not believing this testimony, especially given the lack of concern previously exhibited by both Defendants. Furthermore, our courts have held that long delays in contacting counsel war-rant the denial of a motion for continuance when counsel is retained on the eve of trial. *See Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292, 311 (Ind.Ct.App. 2000) (citing *Fetner v. Maury Boyd & Associates, Inc.,* 563 N.E.2d 1334, 1338 (Ind.Ct.App.1990), *trans. denied* ).

Clark and Biddle note that the trial court mentioned that Ronald and Janet had been waiting 3½ years for their day in Court and that the court would not make them wait any longer. They opine that it was not them, but Ronald and Janet, who caused the greatest amount of delay. However, as the record indicates, most of the delay was attributable to the number of surgeries and the amount of healing that Ronald had to endure that delayed his readiness for trial. Again, we cannot say that the trial court abused its discretion in determining that Ronald need not wait any longer, especially where the court indicated that the next available trial date was in 2008 and that the wait was occasioned by Clark and Biddle's tardiness in hiring counsel.

## II.

■ Clark and Biddle contend that the trial court erred in suggesting that Clark and Biddle consider the option of waiving the issue of liability and proceeding with a bench trial on damages, since Clark essentially told the jury during voir dire that he was at fault and Clark showed great discomfort in facing the jury as a *pro se* litigant. Indeed, Clark and Biddle's prior guilty pleas were stipulated into evidence and Clark described he and Biddle's relationship to the jury as a "circus because we're totally lost." Tr. at 50.

Clark and Biddle now argue that the trial court's suggestion prejudiced them because it precluded them from arguing comparative fault. We cannot agree.

First, we note that the trial court merely made a suggestion (worded in several different ways) based upon Clark's and Biddle's prior admissions of guilt and Clark's obvious uneasiness in front of the jury. The trial court emphasized that its suggestion (worded in several different ways) was not an order and that the trial court was perfectly content to let the jury do the work of deciding liability and the amount of damages. Even though Clark and Biddle were *pro se* litigants, they were held to the same standard as trained counsel. *See Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct.App.2004), *trans. denied.* Clark and Biddle were neither forced nor intimidated into waiving their jury trial.

■ Second, we note that, as Clark and Biddle argue, Indiana's Comparative Fault Act does apply to intentional torts. *See Becker v. Fisher*, 852 N.E.2d 46, 48 (Ind.Ct.App.2006); Ind.Code § 34–52–2–1. However, "the statute has been interpreted to allow a reduction in the award for an intentional tort only when the plaintiff has failed to mitigate damages." *Id.* at 49. In the case of intentional torts, the Comparative Fault Act "does not affect a defendant's *liability* but operates to decrease the amount of *damages* a plaintiff recovers if he has not appropriately mitigated his damages." *Id.* (quoting *Coffman v. Rohrman*, 811 N.E.2d 868, 872–73 (Ind.Ct.App. 2004) (emphases in original)). Clark and Biddle were not prejudiced under the circumstances, as there was no claim of Donald's failure to mitigate damages.

### III.

■ Clark and Biddle contend that the trial court's $738,500.00 compensatory damage award to Donald is excessive. A determination of compensatory damages is entitled to great deference when challenged on appeal. *Clancy v. Goad*, 858 N.E.2d 653, 657 (Ind.Ct.App.2006), *trans.*

*denied.* The court of review will set aside a compensatory damage award as impermissibly excessive only where it is apparent from a review of the evidence that the amount of damages is so great that it cannot be explained upon any basis other than passion, partiality, prejudice, corruption, or some other improper motive. *Id.* Reversal is warranted only when the award appears to be so outrageous as to impress the reviewing court at first blush with its enormity. *Id.*

In the present case, Donald presented evidence that he had already expended $64,663.56 for medical expenses, and Clark and Biddle do not contradict this evidence. However, they contend that the remainder of the award is "not reasonable compared to the amount of damages actually proven during trial." Appellants' Brief at 16. They discount Donald's pain and heart problems because of his prior medical condition. Therefore, Clark and Biddle argue that the award cannot be explained upon any basis other than the improper elements listed above.

■ We note that tortfeasors take their victim as they find him, and they are not relieved from liability merely because of his increased susceptibility to injury. *Armstrong v. Gordon*, 871 N.E.2d 287, 293 (Ind.Ct.App.2007), *trans. denied.* Of course, defendants are liable only to "the extent to which [their] conduct resulted in an aggravation of the pre-existing condition, and not for the condition as it was." *Id.* (quoting *Dunn v. Cadiente*, 516 N.E.2d 52, 56 (Ind.1987)). Clark and Biddle put on no evidence and make no argument that the damages award in the present case had any relationship to Donald's prior condition.

Donald's surgeon testified that initially Donald had wires placed on his jaw for a fracture of his mandible. His cheekbone was "pushed in in front and sticking out

sideways and a little bit back with the arch. The orb itself had a fracture in the floor which normally would support the fat and muscles that help support his eye." Tr. at 115–16. Donald also had severe injuries to his nose in which the force "distracted the cartilage away from the bone in the outer portion of his nose." Tr. at 116.

Because Donald suffered from diabetes, his injuries did not heal well. Consequently, he suffered irregularities in the healing of the areas supported by the wires in his left cheekbone. The surgeons were forced to put metal and titanium plates in Donald's face that had to be secured to the face bones with screws. All of these problems and procedures caused severe pain.

Donald continues to have a misalignment of teeth that will require "extended dental care and procedures to clear that up." Tr. at 121. Injured cartilage in Donald's nose causes breathing problems and continues to be a chronic source of pain. Prior nose surgery resulted in chest pains that required hospitalization. In the future, additional surgery will be required to enlarge Donald's right nostril to allow him to breathe comfortably. In addition, Donald's facial injuries have resulted in his tongue falling back, causing sleep apnea. Because of the injuries to his face, Donald cannot wear a mask to treat the apnea and reduced oxygen and further heart-related difficulties are possible.

Donald testified that he is in constant pain and has difficulty concentrating. Following the attack, he lost forty-one pounds and developed a sensitivity to cold weather that has resulted in doctors advising him to move to a warmer state. However, he does not want to leave his two married daughters. Since the attack, Donald has been unable to do many day-to-day activities, which has greatly affected his relationship with his wife and family. His future includes repeated surgeries to make his life somewhat comfortable and to keep him from suffering from kidney failure, strokes, and other problems. Nerve damage makes it impossible for him to endure even gentle touches to the left side of his face. The scarring and disfigurement to his face is an ongoing problem.

The evidence supports the trial court's conclusions. Given the pain (physical, mental, and relational), scarring, disfigurement, and future problems and procedures caused by the attack, we cannot conclude that the trial court's award is improper.

## IV.

Clark and Biddle contend that the trial court erred, as a matter of state law, in ordering them to pay punitive damages of $60,000.00 to each of the victims. Our supreme court has held "as a matter of state law that review of the amount of a punitive damage award should be *de novo*." *Stroud v. Lints*, 790 N.E.2d 440, 443 (Ind.2003). In *Stroud* the court reversed a $500,000.00 punitive damage award imposed on a drunken teenage driver who ran a stop sign, severely injuring Lints and killing others. The court held that a defendant's financial condition and ability must be considered when such an award is made. *Id.* at 446–47. Indeed, the court characterized this factor as an important one. *Id.* at 447. The court stated:

> An award that not only hurts but permanently cripples the defendant goes too far. A life of financial hopelessness may be an invitation to a life of crime. Perpetual inability to get the financial burden of a judgment off his back leaves a defendant with few alternatives.... [A] staggering punitive damages award is not merely a useless act. It also traps the plaintiff and defendant forever in a creditor-debtor relationship that offers

little if any financial reward to the plaintiff and seems far more likely to lead to nothing but travail for both.

*Id.* at 446 (footnote omitted).

In the present case, the only evidence of financial condition indicates that neither Clark nor Biddle has significant assets. Clark made approximately $13.00 dollars per hour on his job and there is no indication that Biddle has any income. Under these circumstances, we must conclude that the trial court's punitive damages award is excessive.

## V.

 Donald and Janet contend that Clark and Biddle's appeal is frivolous and meritless. Thus, they claim that damages and attorney fees should be awarded pursuant to Indiana Appellate Rule 66(E).

The aforementioned rule states that a court of review may assess damages if an appeal is "frivolous or in bad faith." Case law holds that such awards are appropriate where an appeal is frivolous and in bad faith, and is "permeated with meritlessness, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel,* 797 N.E.2d 342, 346 (Ind.Ct.App.2003). A court should use extreme restraint when exercising its power because of the potential chilling effect upon the exercise of appeals. *Id.*

We find Clark and Biddle's appeal to be neither frivolous nor in bad faith. Indeed, they prevailed in Issue IV. Accordingly, we deny Donald and Janet's request for damages and fees.

We affirm on Issues I–III. We vacate the trial court's punitive damage award and reverse and remand "so that the trial court may enter an award of punitive damages [if any] in an amount reflecting proper consideration of the defendant[s'] financial status." *See Stroud, id.* at 447. We deny Donald and Janet's request for damages and fees.

FRIEDLANDER, J., concurs.

BAKER, C.J., dissenting in part with separate opinion.

BAKER, Chief Judge, dissenting in part.

I respectfully dissent from the majority's conclusion regarding the punitive damages award. I acknowledge our Supreme Court's discussion of punitive damages in *Stroud v. Lints,* 790 N.E.2d 440 (Ind.2003). In this case, however, I believe that the appellants' conduct on the night in question was so egregious, so malicious, and so brutal that the relatively nominal punitive damages award of $60,000 is warranted. Therefore, I would affirm the trial court's punitive damages award. In all other respects, I concur with the majority.