**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SCOTT H. DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEES:

**JOHN D. ULMER**
**STEVEN J. OLSEN**
Yoder, Ainlay, Ulmer & Buckingham, LLP
Goshen, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WILLIAM HESS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1401-CT-35 |
| | ) | |
| C.A.D., C.N.D., JOHN DOE, JANE DOE, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1102-CT-5

**August 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

After a bench trial, William Hess ("Hess") was found to be liable to C.A.D., C.N.D., and their parents, John and Jane Doe (collectively, "the Does"), for damages resulting from emotional distress, counseling expenses, and lost wages, after Hess molested C.A.D. and C.N.D., who were juveniles. Hess now appeals.

We affirm.

**Issues**

Hess raises numerous issues for our review. We restate them as:

I.  Whether the trial court abused its discretion when it did not stay the instant civil proceedings against Hess, pending the resolution of related criminal charges;

II.  Whether the trial court abused its discretion on certain evidentiary rulings because:

    a.  The trial court admitted into evidence testimony of other bad acts committed by Hess, which testimony was not otherwise admissible and was precluded from admission under Evidence Rule 404(b);

    b.  The trial court admitted into evidence testimony and other materials offered by the Does, which evidence was disclosed later than the deadline designated in the pre-trial orders;

    c.  The trial court erroneously admitted into evidence, on the basis of the doctrine of completeness, an affidavit for a search warrant of Hess's residence;

III.  Whether the trial court's supplemental findings and conclusions were adequate to establish the basis for its ultimate finding that Hess had molested C.A.D. and C.N.D.;

IV.  Whether there was sufficient evidence to establish that Hess molested C.N.D.;

2

V.  Whether the compensatory damages the trial court ordered Hess to pay to C.N.D. and C.A.D. were excessive; and

VI.  Whether the judicial temperance presumption should apply in civil cases and, if so, whether that presumption was overcome in this case and any errors were not harmless.

**Facts and Procedural History**

Prior to 2005, Hess lived in a house on County Road 13 in Goshen. Children and teenagers who lived in the neighborhood would frequently come to his home, which he often kept open for visitors. Hess was interested in bow-hunting, archery, and target-shooting with rifles, and many of the visiting children participated in these activities with him. Among these children were C.N.D., a daughter born in 1993 to Jane and John Doe, and C.A.D., a son born in 1995 to Jane and John Doe.

While Hess lived on County Road 13, C.N.D. and C.A.D. would visit Hess and participate in hunting and shooting activities. They would also watch hunting videos and old television shows with Hess. In 2003, Hess married Carol Hess ("Carol"). In 2005, Hess moved with Carol to a home on County Road 142 in Goshen; the new house was not far from the prior residence, and C.N.D. and C.A.D. continued to visit.

On some occasions when Hess would walk by C.N.D. while she was standing, he would smack C.N.D. on her buttocks; C.N.D. would move to avoid this at times. These incidents sometimes occurred while Carol was in the room, though Carol was unaware of this conduct.

Around the time C.A.D. turned eleven years old, Hess began to expose his genitals to C.A.D. Over time, this progressed to Hess and C.A.D. masturbating themselves and one

3

another. On one occasion, Hess persuaded C.A.D. to walk nude with him in a cornfield near Hess's home. On the walk, Hess climbed into a tree stand used for hunting and danced a "happy dance." (Tr. at 369.) Hess came down from the tree stand and induced C.A.D. to dance as well.

C.A.D. and C.H.D. stayed overnight with Hess and Carol on one occasion after the couple moved to County Road 142. C.N.D. slept on a sofa in the couple's living room, and in the morning Hess walked into the living room with his penis exposed outside of his underwear, moving within an arm's length of C.N.D. When other people became audible nearby, Hess put his penis back into his underwear.

Sometime in 2009, Hess acquired a personal computer that he would use to show nude images of women to C.A.D., sometimes with other individuals in the home. Hess would watch as C.A.D. masturbated while looking at the images. On at least one occasion, Hess and C.A.D. masturbated together. This conduct with C.A.D. continued through early 2010.

In June 2010, the Elkhart Sheriff's Department received a report from another juvenile, J.C., whose claims caused detectives to request that C.A.D. be interviewed by a social worker on June 24, 2010 and again on June 30, 2010. After C.A.D.'s initial interview, C.N.D. informed her parents of Hess's conduct with her.

On June 30, 2010, November 1, 2010, and March 4, 2011, criminal charges were filed against Hess in the Elkhart Circuit Court.[1] The criminal proceedings would ultimately be delayed due to court congestion, until Hess pleaded guilty to some charges in May 2014.

_____

[1] This Court hereby takes judicial notice of the trial court Chronological Case Summaries in Elkhart Circuit

4

On February 21, 2011, in the Elkhart Superior Court, the Does filed suit against Hess. In their complaint, the Does alleged that Hess had molested C.N.D. and C.A.D. and engaged in dissemination of matter or conducted a performance harmful to minors, and sought compensatory damages for emotional distress that resulted from Hess's conduct, as well as for costs associated with counseling for C.A.D. and lost wages for Jane Doe.

On November 2, 2011, the trial court entered its pre-trial order, which set forth a list of witnesses and anticipated exhibits. A bench trial was scheduled for September 4, 2012.

On July 27, 2012, Hess filed a motion seeking to stay the Does' civil proceedings against him pending the resolution of the related criminal charges. Hess argued that the absence of a stay put him in danger of having to waive his Fifth Amendment privilege against self-incrimination. The trial court denied the motion on August 14, 2012.

On August 28, 2012, Hess moved to continue the trial, directing the trial court's attention to late-disclosed evidence from the Does. The trial court denied the motion on August 31, 2012.

On September 4, 2012, Hess filed a written request for findings and conclusions upon entry of judgment. A bench trial commenced that same day, and continued on September 5, 2012. The need for additional testimony and discovery resulted in the trial being continued to November 4, 2012; presentation of evidence concluded that day. On several occasions during the trial, witness testimony or other evidence was introduced by the Does, which

Court cause numbers 20C01-1006-FC-00015, 20C01-1011-FC-00016, and 20C01-1103-FD-00019. See Ind. Evidence Rule 201(b) (permitting our courts to take judicial notice of "records of a court of this state") & 201(c) (affording discretion to "take judicial notice" of facts, "whether requested or not").

5

evidence had not been designated in the pre-trial order. Hess objected to the admission of that evidence, and the trial court overruled several such objections. Hess also objected to the admission of certain evidence as serving no purpose other than to demonstrate propensity to commit the alleged acts; many of these objections were also overruled.

On May 30, 2013, after the parties had submitted proposed findings and conclusions, the trial court entered judgment against Hess, finding that he had molested C.A.D. and C.N.D. The court awarded $100,000 in damages each to C.N.D. and C.A.D. The court also awarded the Does $2,568.00 to compensate for the costs of counseling sessions for C.A.D., and another $9,892.72 to compensate Jane Doe for lost wages.

On June 19, 2013, Hess appealed. During the appellate proceedings, Hess moved this Court to remand the case for more specific findings and conclusions. This Court granted Hess's motion and remanded the case to the trial court on November 6, 2013, for the entry of supplemental findings and conclusions.

On December 23, 2013, the trial court entered supplemental findings and conclusions, and reaffirmed its judgment. The instant appeal ensued.

**Discussion and Decision**

Stay of Proceedings

Hess contends that the trial court abused its discretion when it denied his motion seeking a stay in proceedings in this case, pending the resolution of criminal charges against him involving related facts.

6

Whether to grant a stay in proceedings is a matter left to the sound discretion of our trial courts. Hardiman v. Cozmanoff, 4 N.E.3d 1148, 1151 (Ind. 2014). An abuse of discretion occurs when the trial court's decision is contrary to the logic and effects of the facts and circumstances before it. Id. at 1151-52. We will not reverse a judgment for harmless error, which is error that does not prejudice the substantial rights of a party. Ind. Trial Rule 61.

Here Hess contends that the trial court abused its discretion in denying a stay and proceeding to a bench trial because that decision compromised his ability to exercise his Fifth Amendment right not to incriminate himself. The Fifth Amendment to the United States Constitution provides, in relevant part, "No person … shall be compelled in any criminal case to be a witness against himself." The U.S. Supreme Court has interpreted this protection to apply as well in civil cases:

> The Fifth Amendment 'not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future proceedings.'

Baxter v. Palmigiano, 425 U.S. 308, 316 (1976) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)). The decision to exercise that privilege, however, "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Id. at 318.

Recognizing the difficulties confronting a party to a civil case, whose testimony in the civil proceeding may require a decision to assert or waive the Fifth Amendment privilege

against self-incrimination, "'courts in civil proceedings have taken steps to ensure that the litigation proceeds in a manner consistent with the interests of justice.'" Hardiman, 4 N.E.3d at 1152. One such measure is using the court's inherent power to stay proceedings. Id.

There is no constitutional requirement that a court stay such proceedings. Id. Rather, discretion rests with the trial court to impose a stay when the interests of justice require as much. Id. In deciding whether to impose a stay, courts may consider numerous factors, including, but not limited to:

> (1) the interest of the plaintiff in proceeding expeditiously with the litigation or any particular aspect of it, and the potential prejudice to the plaintiff of a delay; (2) the burden which any particular aspect of the proceedings may impose on the defendant; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in pending civil and criminal litigation.

Id. at 1152-53 (citing Jones v. City of Indianapolis, 216 F.R.D. 440, 450 (S.D. Ind. 2003)).

As our supreme court observed in Hardiman, courts consider numerous other factors when presented with a motion to stay civil proceedings in a case like the one now before us. Id. at 1153. "[C]ourts in other jurisdictions have noted the degree of similarity between the issues in both cases is frequently the most important factor." Id. Moreover, "courts frequently consider the status of the parallel criminal proceeding in determining whether a stay is warranted," so that stays may be denied before charges are filed because of the risk of delay. Id.

Here, we are presented with no transcript from the hearing on Hess's motion for a stay, and only a brief order summarily denying that motion. The parties agree that the

substantive issues in the case at bar are closely related to those in the parallel criminal proceedings. See id. at 1153. Thus, the cases are similar; but that is not the end of our inquiry.

The first set of criminal charges were filed against Hess on June 30, 2010. The civil complaint in this case was filed on February 21, 2011. During 2011 and 2012, all three pending criminal proceedings against Hess—including the case in which factual allegations related to those in this case—were delayed due to court congestion. In the meantime, the trial in this case was conducted in September and November 2012, and judgment was entered in May 2013. In November 2013, this Court entered its order to the trial court to enter additional findings and conclusions, and the trial court's expanded findings and conclusions were entered on December 23, 2013. Both parties' briefs in the instant appeal were submitted by May 5, 2014.

In the meantime, due to continued court congestion and a change of venue from the judge in 2013, the related criminal proceedings against Hess continued until he entered a plea agreement on May 27, 2014 in the Elkhart Circuit Court.[2] Given the slow process of the criminal proceedings—as well as the challenges associated with making available as witnesses for trial two minor children, C.A.D. and another boy, J.C.—we cannot conclude that the trial court abused its discretion in declining Hess's motion for a stay.

---

[2] The extremely slow process of the criminal matters here in comparison to the instant civil proceeding give us pause. Whether the numerous findings of court congestion in the parallel criminal proceedings were warranted are more properly addressed in any criminal appeal Hess might bring, assuming he is properly situated to do so.

Moreover, in light of Hess's testimony at trial and the court's evidentiary rulings, we find no prejudice arising from the denial of the stay. Hess was deposed prior to trial and asserted his Fifth Amendment privilege against self-incrimination. Hess subsequently testified during the trial. At trial, Hess waived his Fifth Amendment privilege and expressly denied that he engaged in any form of inappropriate sexual conduct with C.A.D., C.N.D., or any other individual. During the trial, the Does attempted to introduce into evidence in the form of impeachment Hess's deposition testimony invoking his Fifth Amendment privilege against self-incrimination. The Does cited Gash v. Kohm, 476 N.E.2d 910 (Ind. Ct. App. 1985), for the proposition that the deposition testimony could also be used by the trial court to draw an adverse inference against Hess. See id. at 913 (citing, inter alia, Baxter, supra, for the proposition that an adverse inference may be drawn from the refusal of a witness to testify at trial in a civil case). The trial court permitted the Does to introduce the deposition testimony into evidence. But the court concluded that Gash was not on-point because it dealt with refusal on Fifth Amendment grounds to testify at trial, rather than refusal to testify in a deposition. The court accordingly declined to draw any adverse inference against Hess as a result of his exercise during the deposition of his privilege against self-incrimination. (Tr. at 571.)

Thus, during the course of the trial, Hess waived his Fifth Amendment privilege against self-incrimination. The substance of his testimony was non-incriminating, consisting of denials of any form of sexual contact with C.A.D. and C.N.D. Hess was not forced as a result of the denial of the stay to assert his privilege against self-incrimination at trial—thus

10

avoiding any risk of an adverse inference—and the court expressly declined to draw adverse inferences from the invocation of the Fifth Amendment privilege against self-incrimination during his deposition testimony.

As a result, the core concern against which a stay would have served as protection—forcing Hess to choose between offering incriminating testimony or the risk of an adverse inference for exercising a constitutional privilege, as addressed in Gash and Baxter—was obviated. Hess was thus not prejudiced by the denial of the motion to stay, and we accordingly decline to reverse the judgment of the trial court on this issue.

## Admissibility of Evidence

We turn next to Hess's various challenges to the trial court's rulings on the admissibility of evidence. We review decisions on the admission of evidence for an abuse of discretion. Baker v. State, 997 N.E.2d 67, 70 (Ind. Ct. App. 2013).

### *Evidence of Prior Acts*

Hess argues that the testimony of J.C. and S.K. concerning his conduct toward them was inadmissible under Evidence Rule 404(b).

Generally, evidence is admissible when it is relevant to proving a fact of consequence to determining the final outcome of a legal proceeding. Ind. Evidence Rules 401 & 402. There are limits upon the admissibility of otherwise relevant evidence. Evid. R. 402. Among these limits is the prohibition upon the admission into evidence of "a person's character or character trait … to prove that on a particular occasion the person acted in accordance with the character or trait"—that is, propensity evidence. Evid. R. 404(a)(1). Such inadmissible

11

propensity evidence includes "[e]vidence of a crime, wrong, or other act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid. R. 404(b)(1). Evidence of a crime, wrong, or other act may, however, "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2). Even when evidence a party seeks to admit satisfies the requirements of Rule 404, that evidence must also satisfy Rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect.

Here, Hess objected to testimony from J.C. and S.K. J.C. and S.K. each testified that Hess had previously molested them, and had engaged in some form of "grooming" activity in advance of the molestation. Hess contended at trial, and contends again now, that the two individuals' testimonies did not meet any of the exceptions associated with Rule 404(b). As a result, Hess argues, the statements were inadmissible because their sole function was as propensity evidence that would give rise to an inference that Hess had committed the torts alleged by the Does. Hess further contends that any such errors were not harmless because, without the testimony of J.C. and S.K., the only probative evidence that might establish Hess's liability is that of C.A.D. and C.N.D., rendering the entire trial nothing more than a credibility contest.

Upon review of the record, we do not agree with Hess that all of J.C.'s and S.K.'s testimony failed to meet the requirements of Rule 404(b) and 403. Notably, J.C. testified that

12

Hess had molested him. Following that testimony, the following exchange occurred between the Does' counsel and J.C.:

> Q. Did he [Hess] ever mention to you [J.C.] that other young boys were doing these things?
>
> A. Yes.
>
> Q. And what would he say? (COUGHING IN COURTROOM.)
>
> A. He would just tell me that they were doing basically the same stuff.
>
> Q. Did he mention anybody's names?
>
> A. Yes.
>
> Q. And whose names did he mention?
>
> A. Initially, C.A.D.
>
> [THE COURT]: Again, please.
>
> A. C.A.D.
>
> [THE COURT]: I'm sorry?
>
> A. C.A.D.
>
> [THE COURT]: C.A.D.?
>
> Q. C.A.D.?
>
> A. Yes.

(Tr. at 139-140.)

Thus, J.C. testified not only that Hess had masturbated J.C., but that Hess had admitted to engaging in that conduct with C.A.D.—one of the plaintiffs in this case—as a means to convince J.C. to engage in similar conduct.

13

We cannot, then, conclude that all of the evidence to which Hess objected under Rule 404(b) was irrelevant or served only to prove Hess's conduct in conformance with other prior alleged acts.

To the extent other evidence was admitted in contravention to Rule 404(b), we conclude any such error was harmless. While Hess insists that the presence of erroneously-admitted testimony from J.C. and S.K. was prejudicial because it served only to undermine his credibility in a contest between himself and the Does, other evidence implicating Hess came in the form of Detective Osterday's testimony that a third party—J.C.—had provided information that caused him to inquire into Hess's interactions with C.A.D. Moreover, we conclude below that there is sufficient independent evidence to sustain the trial court's judgment as to Hess molesting both C.A.D. and C.N.D.

We accordingly find no reversible error associated with the trial court's rulings on the admissibility of J.C.'s and S.K.'s testimonies.

*Late Disclosure*

Hess contends that the trial court abused its discretion when it admitted into evidence S.K.'s testimony, a book used by C.A.D., and testimony and evidence from Jane concerning loss of earnings.

Indiana Trial Rule 16 permits trial courts to enter pre-trial orders that reflect "agreements made by the parties during the pre-trial hearing" concerning the conduct of the subsequent proceedings. Woodward v. Heritage Const. Co., 887 N.E.2d 994, 1000 (Ind. Ct. App. 2008). Once entered, the pre-trial order governs subsequent proceedings, unless

14

subsequent modification occurs "to prevent manifest injustice." Id. (citing Ind. Trial Rule 16(J)). In modifying the terms of the order, courts look to "both the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim." Id. The trial court may also look to whether modifying the pre-trial order will "disrupt an orderly and efficient trial," and may inquire as to whether there has been bad faith or willfulness in failing to comply with the existing pre-trial order. Id.

Even though the pre-trial order is binding, "this does not mean that it must be rigidly and pointlessly adhered to at trial." Id. (citations and quotations omitted). When particular witnesses or exhibits have been omitted from the pre-trial order, whether those should be omitted from evidence during trial is a matter left to the discretion of the trial court. Id.

With respect to late-disclosed evidence, Hess first challenges the admission of testimony from S.K., contending that the trial court abused its discretion in permitting her testimony because S.K. was not named in the pre-trial order's witness list and S.K. was not made available for deposition before the trial commenced on September 4, 2012. Because we have concluded above that errors associated with S.K.'s testimony were harmless, we do not address the question of S.K.'s exclusion from the witness list. Nor can we agree with Hess's contention that the Does' attorney acted in bad faith in failing to disclose S.K. as a witness: the Does' counsel informed the trial court of its efforts to depose S.K. before trial, and the trial court expressly found no basis to question that account. Accordingly, we will not revisit the trial court's determination of that issue.

15

Hess also challenges the admission into evidence of two sets of exhibits. One of these was a book entitled, "Back on Track," a book C.A.D. had received as part of counseling with a social worker. C.A.D. had written on some pages in the book, and those pages were admitted into evidence; Hess contends that the trial court abused its discretion when it admitted for "demonstrative purposes" the rest of the book, which had not been disclosed prior to trial. (Tr. at 289-90, 293-94.) Yet Hess fails to state in his appellant's brief how he was prejudiced by the trial court's admission of the book solely for its demonstrative value, and neither the trial record nor the appendices of the parties provide us with a copy of the book to facilitate our review. Hess has thus waived this issue for our review.

Finally, Hess contends that the trial court abused its discretion in allowing evidence of Jane's lost wages to be admitted at trial because the Does did not update their discovery disclosures in advance of trial, thereby catching Hess "off-guard" at trial. (Appellant's Br. at 25.) Yet Hess acknowledges: "Luckily … it was at this time that the Trial Court had to continue the trial for several months due to scheduling conflicts, allowing Hess to review the information which the Plaintiff intended to introduce regarding Jane Doe's lost wages." (Appellant's Br. at 25.) Simply put, Hess complains of prejudice, and in the very next breath acknowledges not having been prejudiced by the trial court's decision. We accordingly conclude that any complained-of error in this regard was harmless.

*Affidavits for Search Warrants*

Hess designates as erroneous the trial court's decision to admit into evidence the entirety of the affidavits for search warrants, which documents Detective Osterday submitted

16

in order to obtain warrants to search Hess's home and vehicle. Hess contends that by admitting these documents into evidence, the trial court erred in its application of the doctrine of completeness, and further that the warrants were law enforcement records subject to exclusion from evidence under Evidence Rule 803(8). The doctrine of completeness is formalized in Evidence Rule 106, which provides, "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Evidence Rule 803(8) establishes an exception to the hearsay rule that permits admission into evidence under certain circumstances of "a record or statement of a public office." Evid. R. 803(8)(A). The rule is limited in scope, however, so that investigative reports by police or other law enforcement agencies may not be admitted "except when offered by an accused in a criminal case." Evid. R. 803(8)(B)(i).

Here, Hess cross-examined Detective Osterday about his search of Hess's residence, during which Detective Osterday looked for items like address and phone lists, and other items that Detective Osterday had averred were often found in the homes of pedophiles. In support of the cross-examination, Hess introduced into evidence portions of the affidavits supporting Detective Osterday's request for a search warrant. Supported by portions of the affidavits, Hess elicited testimony that very little of the types of physical evidence designated for seizure by the warrant were ultimately found in Hess's home. Upon re-direct examination of Detective Osterday, the Does sought admission of the rest of the probable cause affidavit, which included the names of witnesses, including J.C. and S.K., and allegations concerning

Hess's conduct. Hess objected that the doctrine of completeness did not permit the admission of the rest of the affidavits' contents.

Much of the purportedly prejudicial material in the affidavits, however, largely overlaps with allegations made by J.C. and S.K. in their testimonies concerning Hess. We have already concluded that admission of these portions of their testimonies were at most harmless error. The material included in the search warrant affidavits is, at most, cumulative of those testimonies, and we do not reverse for the admission or denial of cumulative evidence. See Cole v. State, 970 N.E.2d 779, 784 (Ind. Ct. App. 2012). And to the extent Hess complains that the affidavits were law enforcement records subject to exclusion from evidence under Rule 803(8), the admission of the affidavits is invited error, as Hess sought admission of portions of the same affidavits in a civil, rather than criminal context. See Evid. R. 803(8)(B)(i); Wright v. State, 828 N.E.2d 904, 907 (Ind. 2005) (observing that under the doctrine of invited error, "'a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct'") (quoting Witte v. Mundy, 820 N.E.2d 128, 133-34 (Ind. 2005)).

We accordingly find no reversible error in the trial court's admission of the affidavits.

Adequacy of the Findings and Conclusions

Hess contends on appeal that the trial court's supplemental findings and conclusions, issued on December 23, 2013 to supplement the original order entering judgment in favor of the Does, were insufficient under Trial Rule 52. The entry of findings and conclusions under Trial Rule 52(A) "is a method for formalizing the ruling of the trial court, providing more

18

specific information for the parties, and establishing a particularized statement for examination on appeal." Bowman v. Kitchel, 644 N.E.2d 878, 879 (Ind. 1995). The purpose of specific findings and conclusions—whether written or oral—is to make "apparent" the basis upon which the trial court reached its judgment. Nunn Law Office v. Rosenthal, 905 N.E.2d 513, 518 (Ind. Ct. App. 2009).

The trial court's initial entry of judgment, on May 30, 2013, did not provide sufficient detail, merely stating that the trial court found "by a preponderance of the evidence introduced, the Defendant William L. Hess, committed tortious acts of child molesting against C.A.D. and C.N.D." (Appellant's Br. at 44.) Upon filing his appeal, Hess moved this Court to order the case remanded for entry of more specific findings and conclusions. That motion was granted, and upon remand the trial court entered supplemental findings and conclusions. It is the adequacy of the supplemental findings and conclusions which Hess now challenges, contending that these do no more than restate the substance of the May 30, 2013 findings, and "fail[] to state … which facts [the court] found existed in order to justify such a conclusion." (Appellant's Br. at 36.)

We do not agree with Hess's contentions. The supplemental findings and conclusions state, in relevant part:

The court makes the following supplemental findings of fact.

1. Defendant engaged in grooming activities with C.N.D. and C.A.D. That grooming activity included touching C.A.D.'s genital region and displaying pornographic materials to C.A.D. using Defendant's computer. Defendant encouraged C.A.D. to masturbate while viewing sexually explicit materials and would watch as C.A.D. did so.

19

2. On at least one occasion Defendant engaged in mutual masturbation with C.A.D.

3. Defendant touched C.N.D. on her buttocks and exposed his naked penis to C.N.D.

(Appellant's App'x at 5.)

These findings make clear the basis for the trial court's ultimate finding that C.A.D. and C.N.D. were molested by Hess. We accordingly find no basis for error in the adequacy of the trial court's findings and conclusions.

Sufficiency of the Evidence as to C.N.D.

We turn next to Hess's contention that there was insufficient evidence adduced at trial to support the court's finding that Hess molested C.N.D. as alleged in the Does' complaint.

Hess appeals from a civil judgment entered after a bench trial. Our standard of review in such cases is well settled. Upon a challenge to the sufficiency of the evidence, we neither reweigh evidence nor judge the credibility of witnesses. Estate of Kappel v. Kappel, 979 N.E.2d 642, 651 (Ind. Ct. App. 2012). We consider only the evidence that most favors the judgment together with all reasonable inferences that may be drawn therefrom. Id.

Here, upon written motion submitted by Hess, the trial court entered judgment in the form of written findings and conclusions under Trial Rule 52. Upon appeal:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However,

20

while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

Id. at 651-52 (quoting Balicki v. Balicki, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005)),

trans. denied.

In their complaint, the Does alleged in relevant part that Hess, "at the time said minor children were under fourteen (14) years of age knowingly performed, touched, or exposed himself to said minors in violation of I.C. § 35-42-4-3(b) and I.C. § 35-42-4-9(b)(1)," the statutory definitions for the offenses of Child Molesting and Sexual Misconduct with a Minor. (Appellant's App'x at 84.) Indiana Code subsection 35-42-4-3(b), as in effect at the time of trial,[3] provided:

> A person who, with a child under fourteen (14) years of age, *performs* or submits to *any fondling or touching, of either the child or the older person*, *with intent to arouse or to satisfy the sexual desires of either the child or the older person*, commits child molesting.

I.C. § 35-42-4-3(b) (West 2013) (emphasis added). Indiana Code subsection 35-42-4-9(b)(1), as enacted at the time of trial, provided:

> A person at least eighteen (18) years of age who, with a child of at least fourteen (14) years of age but less than sixteen (16) years of age, *performs* or submits to *any fondling or touching*, *of either the child or the older person*, *with intent to arouse or to satisfy the sexual desires of either the child or the older person*, commits sexual misconduct with a minor….

---

[3] The legislature has, since the time of trial, amended the applicable statutes to reclassify specific offenses and modify the sentencing ranges for offenses committed on or after July 1, 2014. The substantive elements of the offenses have not been changed.

I.C. § 35-42-4-9(b) (West 2013) (emphasis added).[4]

Touching alone is insufficient to establish the elements of the alleged torts. See Bass v. State, 947 N.E.2d 456, 460 (Ind. Ct. App. 2011) (discussing Child Molesting in the context of a criminal case). Rather, there must be sufficient evidence of specific intent to arouse or satisfy sexual desires. Id. Intent may be established by circumstantial evidence and may be inferred from the defendant's conduct and the natural and usual sequence to which such conduct ordinarily points. Id.

In his brief, Hess draws our attention to this Court's decision in Clark v. State, 695 N.E.2d 999 (Ind. Ct. App. 1998), trans. denied. In Clark, we held that there was insufficient evidence to sustain the conviction for Child Molesting of a man who had removed his six-year-old daughter's pants, hanged her upside down from her shirt, and tickled her sides. Id. at 1002. We noted in particular that there was insufficient evidence that Clark did any of this "accompanied by the specific intent to arouse or satisfy" either his or his daughter's sexual desires. We acknowledged that the facts of the case "clearly raise[d] questions concerning the propriety of Clark's behavior," but observed that "*standing alone*, they do not constitute substantive evidence of probative value on the element of intent" in a criminal case requiring proof beyond a reasonable doubt. Id. (emphasis added).

Here, by contrast, Hess smacked C.N.D.'s buttock several times and exposed his penis to her on one occasion, coming within arm's reach of her. When Hess exposed himself to C.N.D., he only ceased to do so when he became aware of other individuals nearby. Taken

---

[4] Subsection 35-42-4-9(b)(1), as cited by the Does in their complaint, aggravated the offense from a Class D felony to a Class C felony.

22

together, this is sufficient evidence from which the trial court could conclude by a preponderance of the evidence—the less-stringent burden of proof required in a civil proceeding like the one at bar—that Hess touched C.N.D. with the intent to arouse or satisfy either his or C.N.D.'s sexual desires. To the extent Hess contends that his conduct was merely inappropriate, his argument requests that we reweigh evidence; this we cannot do. See Kappel, 979 N.E.2d at 651. We accordingly leave undisturbed the trial court's entry of judgment in favor of C.N.D.

### Damages

We turn next to Hess's contention that the compensatory damages awarded were excessive. A trial court's determination of compensatory damages is entitled to "great deference" upon appeal. Clark v. Simbeck, 895 N.E.2d 315, 319 (Ind. Ct. App. 2008). Upon appellate review, we will set aside an award of compensatory damages as impermissibly excessive "only where it is apparent from a review of the evidence that the amount of damages is so great that it cannot be explained upon any basis other than passion, partiality, prejudice, corruption, or some other improper motive." Id. We will reverse the award "only when the award appears to be so outrageous as to impress the reviewing court at first blush with its enormity." Id.

Here, the trial court awarded $100,000 in compensatory damages each to C.A.D. and C.N.D. as a result of each one having "suffered emotional distress." (Appellant's App'x at 4.) With respect to each, Hess argues that the award was excessive. Turning first to C.N.D., Hess claims that "there was no evidence presented that C.N.D. suffered any kind of

23

permanent emotional damage," and "no evidence showing causation between the emotional injuries she claimed and Hess' alleged misconduct." (Appellant's Br. at 32.)

We disagree. C.N.D. testified that she felt "scarred" by Hess's exposure of his penis to her because she had "never been exposed to that" before, and that she "just hurt[s]" from the experiences. (Tr. 206, 237.) Hess notes that C.N.D. has not pursued counseling, and she did not report any of the incidents close to when they occurred. However, C.N.D. testified that she was "really little" when the first incidents with Hess occurred. (Tr. at 224.) C.N.D. also testified that she initially found it too difficult to talk to her parents about her experiences. (Tr. at 209.) John Doe, C.N.D.'s father, also testified that C.N.D.'s experiences with Hess continue to affect her, including at least one episode of spontaneous crying. (Tr. at 248.) To the extent that Hess points to an isolated instance of therapy related to a dispute between C.N.D. and her mother when C.N.D. was in high school and a relative lack of disruption in C.N.D.'s schooling and extracurricular activities, these arguments do not establish that the damages were awarded out of "passion, partiality, prejudice, corruption, or some other improper motive." Clark, 895 N.E.2d at 319.

We conclude likewise about the damages awarded to C.A.D. C.A.D. testified that the experiences with Hess caused him to "grow up faster" than he should have. (Tr. at 375.) C.A.D. had received counseling from a social worker, Jennifer Miller ("Miller"). That counseling was ongoing throughout the trial. Miller testified that C.A.D. experienced trust problems, difficulty with peer relationships, lowered self-esteem, and ongoing emotional issues, and that some of the effects of Hess's molestation would likely recur at various points

24

in C.A.D.'s life and require additional therapy. Both John and Jane Doe testified that C.A.D. had continuing emotional difficulties at home, with John testifying that during high school, C.A.D. would sometimes come home in the afternoon having wet his underclothes. Hess, again, argues that C.A.D.'s performance in school and extracurricular activities remained strong; again, we find no basis from which to conclude that the award of damages was "so outrageous" on first blush as to require that we reverse the trial court's award. Clark, 895 N.E.2d at 319.

Accordingly, we leave undisturbed the trial court's award of compensatory damages to C.A.D. and C.N.D.

Judicial Temperance

We turn now to Hess's final contention: that the doctrine of the judicial temperance presumption applies in civil bench trials, that in this case the presumption was overcome, that any error was not harmless, and thus he is entitled to a reversal of the trial court's judgment.

The judicial temperance presumption is "'a curious ratiocinative process which presumes that the trial court will disregard that which it holds admissible over specific objection.'" Konopasek v. State, 946 N.E.2d 23, 28 (Ind. 2011) (quoting Fletcher v. State, 264 Ind. 132, 134, 340 N.E.2d 771, 773 (1976)). If a defendant lodged an objection during a bench trial to the admissibility of evidence, which objection was overruled, and the evidence was in fact inadmissible, "the presumption comes into play." Id. at 30. The presumption may be overcome "where a defendant makes a specific objection to the admission of evidence" that the trial court overrules. Id. If the presumption is overcome, the appellate

25

court engages in a full harmless-error analysis, under which the error is harmless "if the 'reviewing court is satisfied that the conviction is supported by substantial independent evidence of guilt so that there is no substantial likelihood that the challenged evidence contributed to the conviction.'" Id. (quoting Meadows v. State, 785 N.E.2d 1112, 1122 (Ind. Ct. App. 2003)). If the presumption is not overcome, then the appellate court presumes the trial court disregarded improperly-admitted evidence and any error is found harmless. Id. "In short, an analysis of the presumption *may either trigger or circumvent* full harmless-error analysis." Id. (emphasis added).

Hess acknowledges that there is no civil case in which the doctrine concerning the judicial temperance presumption has been held to be applicable, and in effect conflates the entirety of the doctrine of the judicial temperance presumption with the requirements of harmless error analysis. In reviewing the evidentiary matters presented, we have concluded that some presented no error, and that others were harmless. And Hess presents no basis upon which to extend the judicial temperance presumption to civil bench trials in any event.

We accordingly find no basis upon which to reverse the judgment of the trial court.

**Conclusion**

The trial court did not abuse its discretion when it denied Hess's motion to stay the trial pending resolution of parallel criminal proceedings. Much of the evidence to which Hess objected was admissible, and any error associated with the trial court's admission of evidence was harmless. The trial court's supplemental findings and conclusions were adequate. There was sufficient evidence introduced at trial for the trial court to conclude that

26

Hess molested C.N.D.  The award of damages was not excessive.  We decline to extend the doctrine of presumed judicial temperance to civil cases, and the applicability of that analysis is in any event obviated by our review in this case.  We accordingly affirm the judgment in all respects.

Affirmed.

KIRSCH, J., and MAY, J., concur.